UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

REMBRANDT TECHNOLOGIES, LP,

               Plaintiff,

    v.

CHARTER COMMUNICATIONS, INC.,
CHARTER COMMUNICATIONS
OPERATING, LLC, COXCOM, INC., CSC
HOLDINGS, INC., and CABLEVISION
SYSTEMS CORPORATION,

               Defendants.

CASE NO. 2-06CV-223 TJW

**DEFENDANT COXCOM, INC.'S MOTION TO DISMISS
PLAINTIFF'S COMPLAINT PURSUANT TO RULE 12(b)(2)
<u>AND BRIEF IN SUPPORT THEREOF</u>**

Defendant CoxCom, Inc. ("CoxCom") moves, pursuant to Federal Rule of Civil

Procedure 12(b)(2), to dismiss Plaintiff Rembrandt Technologies, LP's claims against it on

the grounds that this Court lacks personal jurisdiction.

**I.     INTRODUCTION**

This is an action for alleged patent infringement of patents purportedly owned by

Plaintiff Rembrandt Technologies, LP ("Rembrandt").

CoxCom, a Delaware corporation with its principal place of business in Atlanta,

Georgia, is not registered to do business in Texas and does not do business in Texas such that

it would be subject to this Court's general personal jurisdiction. Moreover, CoxCom does

not own or operate any cable systems or provide high-speed Internet services in Texas such

that it would be subject to this Court's specific personal jurisdiction. In fact, CoxCom's only

contact with Texas is a point of presence ("POP") node consisting of servers and routing equipment which is located in leased space in Dallas and which is unrelated to the accused methods and systems at issue in this case.

Indeed, this Court has recently held that it lacks jurisdiction over CoxCom.  In a matter pending before Judge Clark in the Eastern District of Texas (USA Video Technology Corporation v. Time Warner Cable, Inc., *et al*; civil action number 2:06-CV-239-RHC), the Court held that CoxCom did not have the minimum contacts with Texas sufficient to support the exercise of personal jurisdiction even after having granted the plaintiff jurisdictional discovery.[1]  Defendant CoxCom respectfully requests that this Court similarly find that CoxCom has insufficient contacts with Texas to support jurisdiction and dismiss Plaintiff's Complaint as to Defendant CoxCom.

## II.   UNDISPUTED MATERIAL FACTS

1.     CoxCom is incorporated in Delaware, with a principal place of business in Atlanta, Georgia.  (Declaration of John Spalding in Support of Defendant CoxCom, Inc.'s Motion to Dismiss Pursuant to Rule 12(b)(2) ¶ 2 [hereinafter Spalding Decl.].)[2]

2.     CoxCom has no corporate presence in Texas.  CoxCom is not registered to do business in Texas and does not maintain any place of business, maintain any office, or keep any corporate books or records in Texas.  (*Id.* ¶ 3.)  CoxCom does not provide goods or services to any customers in Texas, and does not derive revenues from Texas.  (*Id.* ¶ 4.)

3.     CoxCom is an operational entity that owns and operates cable systems. However, CoxCom does not currently own or operate any cable systems in Texas and does

---

[1]   A copy of Judge Clark's order is attached hereto as Exhibit 1.

[2]   A copy of Mr. Spalding's declaration is attached hereto as Exhibit 2.

2

not provide any cable television, internet, or telephone services in Texas.  (*Id.*)  That is, CoxCom does not make, use or sell the accused technology in Texas.

4.      CoxCom's only contact with Texas is an internet backbone node.  (*Id.* ¶ 5.) The node consists of servers and routing equipment located in leased space in Dallas.  (*Id.*) This Point of Presence (POP) carries internet protocol traffic and is not related to the accused methods and systems.  (*Id.*)

5.      There are no employees of CoxCom located in Texas.  (*Id.* ¶ 6.)  All CoxCom engineers and service technicians for the node are located outside of Texas.  (*Id.*)

6.      With the exception of the node, all assets of CoxCom that were located in Texas were sold to Cox Southwest Holdings, L.P. ("Cox Southwest") on or about December 31, 2003 (*Id.* ¶ 7.)  Thereafter, with the sole exception of a cable television franchise located in Henderson, Texas, Cox Southwest sold all of its assets to Cebridge Acquisition, L.P. ("Cebridge").  (*Id.*)  Cox Southwest is an entity separate from CoxCom and maintains its own corporate formalities, including books, records, boards and corporate structure.  (*Id.*)

7.      Cox Communications was named a defendant in an action filed by USA Video Technology Corporation ("USA Video") pending before Judge Ron Clark of the Eastern District of Texas, Marshall Division (civil action number 2:06-CV-239-RHC).  Cox Communications moved to dismiss the action as to it on the grounds that the court lacked personal jurisdiction.  USA Video opposed the motion and moved to amend its complaint to add CoxCom as an additional defendant.  CoxCom opposed the motion to amend on the grounds that the court lacked personal jurisdiction.  After granting plaintiff jurisdictional discovery, Judge Clark issued an order finding that the court lacked personal jurisdiction over both Cox Communications and CoxCom and ordered that the claims asserted against

3

Cox Communications be severed and transferred to the United States District Court for the
District of Delaware and that USA Video's motion to amend to add CoxCom be denied.  *See*
Exhibit 1.

8.      Plaintiff Rembrandt is a limited partnership organized under the laws of the
State of New Jersey with its principal place of business at 401 City Avenue, Suite 815, Bala
Cynwyd, Pennsylvania.  (First Am. Compl. ¶ 1.)

9.      In June 2006, Plaintiff filed this suit in the Eastern District of Texas, Marshall
Division against CoxCom and other cable television service providers, contending that the
Defendants' systems and services infringed United States Patent Nos. 5,243,627; 5,852,631;
5,719,858; and 4,937,819 (collectively the "patents in suit").

10.     Plaintiff contends that CoxCom has committed acts of patent infringement in
the Eastern District of Texas or is otherwise present or doing business in this district.  (First
Am. Compl. ¶ 11.)

11.     Plaintiff contends that CoxCom employs the inventions of, and therefore
infringes, each of the patents in suit by receiving and transmitting digital terrestrial broadcast
signals over the cable television systems it operates and by providing high speed internet
service, such as VoIP.  (First Am. Compl. ¶¶ 17, 23, 29 35.)

12.     Rembrandt is a company that invests in patents, but does not practice them.
Instead, it acquires rights to patents and sues entities it believes infringe upon those patents.
Rembrandt apparently maintains or is associated with a website at
http://www.rembrandtfund.com.[3]  According to its website, Rembrandt "shoulders the legal,

---

[3]  Attached hereto as Exhibit 3 is a true and correct copy of excerpts from Rembrandt's website.

4

financial, and business risks associated with pursuing patent pirates and provides the capital and expertise required to litigate complex patent infringements." *Id*. at 2. To pursue such patent infringement litigation, Rembrandt maintains a "staff of in-house professionals and outside consultants" that "includes scientists, inventors, financial analysts, lawyers, and researchers who are expert at identifying the validity and market value of patents and Intellectual Property (IP), and securing revenue for these inventors and companies as well as Rembrandt's investors." *Id*.

13.     Rembrandt's business is thus to initiate lawsuits to enforce patent rights. Rembrandt is engaged in the enforcement of patents it has acquired in a number of different industries.

14.     Rembrandt has pursued its business of enforcing patent rights through litigation in Delaware. On October 13, 2006, Rembrandt filed a patent infringement action against Cablevision Systems Corporation, et al., that is captioned *Rembrandt Technologies, L.P. v. Cablevision Systems Corporation and CSC Holdings, Inc.*, Case No. 1:06-CV-00635-GMS (D. Del.) ("Cablevision Action"). In the Cablevision Action, Rembrandt asserts the same patents that are at issue in this action, as well as one additional patent. Rembrandt has also brought multiple other suits in Delaware to enforce one of the patents in suit, United States Patent No. 5,243,627, against CBS, ABC, NBC and Fox. Those actions were filed in the District of Delaware on December 1, 2006, and are styled as: *Rembrandt Technologies, L.P. v. CBS Corporation*, Case No. 1:06-00727; *Rembrandt Technologies, L.P. v. NBC Universal, Inc.*, Case No. 1:06-00729; *Rembrandt Technologies, L.P. v. ABC, Inc.*, Case No.

5

1:06-00730; *Rembrandt Technologies, L.P. v. Fox Entertainment Group, Inc. and Fox Broadcasting Company*, Case No. 1:06-00731.[4]

## III.    ISSUE PRESENTED

Are there sufficient "minimum contacts" between CoxCom and Texas to justify the exercise of personal jurisdiction over CoxCom?

## IV.    ARGUMENT

### A.    Legal Standard.

Determining whether personal jurisdiction exists over a non-resident defendant involves two inquiries:  whether personal jurisdiction exists under the forum's long-arm statute and, if so, whether the exercise of personal jurisdiction comports with due process. *Trintec Indus., Inc. v. Pedre Promotional Prods., Inc.*, 395 F.3d 1275, 1279 (Fed. Cir. 2005). If the forum's long-arm statute is coextensive with the limits of due process, "the two inquires collapse into a single inquiry:  whether jurisdiction comports with due process." *Dainippon Screen Mfg. Co. v. CFMT, Inc.*, 142 F.3d 1266, 1270 (Fed. Cir. 1998).  While Federal Circuit precedent controls the due process analysis, the law of the forum governs the interpretation of the forum's long-arm statute.  *HollyAnne Corp. v. TFT, Inc.*, 199 F.3d 1304, 1307 (Fed. Cir. 1999); *3D Sys., Inc. v. Aarotech Labs., Inc.*, 160 F.3d 1373, 1377 (Fed. Cir. 1998) ("While we defer to the interpretation of a state's long-arm statute given by that state's highest court, particularly whether or not the statute is intended to reach the limit of federal due process, when analyzing personal jurisdiction for purposes of compliance with federal

---

[4] The Court can take judicial notice under Fed.R.Evid. 201 of the pendency of these proceedings.

US2000 9510654.6 C8490-331049

due process, Federal Circuit law, rather than regional circuit law applies.") (internal citations omitted).

Due process concerns mandate that a court may only exercise personal jurisdiction over a non-resident defendant where that defendant "has certain minimum contacts with the forum such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984) (internal citations and quotations omitted). This is because the defendant has a liberty interest in not being subject to the judgments of a forum with which it has no meaningful minimum "contacts, ties or relations" and, out of fairness, defendants should not be "haled into a jurisdiction solely as the result of random, fortuitous, or attenuated contacts." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471-72, 475 (1985) (internal quotations omitted). Personal jurisdiction may be either general or specific. *See Helicopteros*, 466 U.S. at 414, n.9.

In reviewing a motion to dismiss, a court must assume the truth of all factual allegations made in the complaint and construe all inferences from them in the light most favorable to the plaintiff. *Electronics for Imaging, Inc. v. Coyle*, 340 F.3d 1344, 1349 (Fed. Cir. 2003); *U.S. v. Smithfield Foods, Inc.*, 332 F. Supp. 2d 55, 59 (D.D.C. 2004). At the same time, however, jurisdiction may not be invoked solely on "bare allegations or conclusory statements." *Smithfield Foods*, 332 F. Supp. at 60. When personal jurisdiction is challenged, the plaintiff must "allege specific facts connecting [the] defendant with the forum." *Id.*

US2000 9510654.6 C8490-331049

As demonstrated below, Defendant CoxCom's contacts with the Eastern District of Texas are insufficient to establish either general jurisdiction or specific jurisdiction. Accordingly, Plaintiff's Complaint should be dismissed.

**B.      CoxCom Does Not Have Sufficient "Substantial and Continuous" Contacts With Texas to Justify the Exercise of General Jurisdiction.**

This Court's personal jurisdiction over a non-resident corporate defendant such as CoxCom is appropriate only if authorized by the Texas Long Arm Statute, which has been construed to be coextensive with constitutional due process requirements.  *See Alpine View Co. v. Atlas Copco AB*, 205 F.3d 208, 214 (5th Cir. 2000); *see also* Tex. Civ. Prac. & Rem. Code Ann. § 17.04.  Therefore, the analysis of general jurisdiction is one of federal due process.

In determining whether a defendant has "continuous and systematic" contacts with the forum, a court will consider factors such as whether the defendant maintains an office in the forum, has been licensed to conduct business in the forum, has employees or agents in the forum, uses bank accounts in the forum, or markets or sells products in the forum.  *See, e.g., Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 416 (1984) (holding there was no general jurisdiction where defendant did not have a place of business in the forum, was not licensed to do business in the forum and its only contacts consisted of sending an officer to the forum for a contract-negotiation session, accepting checks drawn on a bank in the forum, purchasing products and services from the forum, and sending personnel to the forum for training). None of these factors are present in this case.

CoxCom is a Delaware corporation that is not registered or qualified to do business in Texas because it does no business in Texas.  (Spalding Decl. ¶¶ 3, 4.)   CoxCom does not

8

provide goods or services to any customers in Texas, and, therefore, does not derive revenues from any Texas transactions, activities, or connections. (*Id.* ¶ 4. ) CoxCom does not maintain any place of business, maintain any office, or keep any corporate books or records in Texas. (*Id.* ¶ 3.) Finally, Judge Clark, in addressing exactly this issue just weeks ago, found that CoxCom had insufficient contacts with Texas to justify the exercise of general personal jurisdiction over CoxCom. Exhibit 1 at 1.

### C.   The Exercise of Specific Jurisdiction Over CoxCom Would Not Comport With Due Process Given That CoxCom Has No Contacts with Texas Related to Plaintiff's Claims.

The Federal Circuit has developed a three-prong test to determine whether the exercise of specific jurisdiction over a nonresident comports with due process:

(1)   whether the defendant purposefully directed its activities at the residents of the forum;

(2)   whether the claim arises out of or is related to those activities, and

(3)   whether assertion of personal jurisdiction is reasonable and fair.

*Akro Corp. v. Luker*, 45 F.3d 1541, 1545-46 (Fed. Cir. 1995); *HollyAnne Corp. v. TFT, Inc.*, 199 F.3d 1304, 1307-08 (Fed. Cir. 1999). The plaintiff must prove all three prongs to establish jurisdiction. *Akro*, 45 F.3d at 1545. None are satisfied in this case.

CoxCom's sole contact with Texas is an internet node that carries internet traffic for CoxCom's cable systems, which are located outside of Texas. The internet node is not related to the DOCSIS communications that occur between a cable modem and the cable modem termination system in the head-end (Spalding Decl. ¶ 5), which are the methods and systems at issue in this litigation. (*See* First Am. Compl. ¶¶ 9, 11, 14, 16, 19, 21, 24, 26 (describing the patents in suit)). The purpose of the node, which is implemented by

9

computer servers in leased space in Dallas, is to connect with CoxCom's national internet backbone to carry traffic from and to its cable systems that are located in several (non-Texas) metro areas through the country. Citizens to which those activities are directed reside in the other states in which CoxCom offers high speed internet and cable services—services it does not offer in Texas. (Spalding Decl. ¶ 4.) *Compare Trintec Indus., Inc. v. Pedre Promotional Prods., Inc.*, 395 F.3d 1275, 1281 (Fed. Cir. 2005) (criticizing plaintiff's reliance on website for jurisdiction because the "website is not directed at customers in the District of Columbia, but instead is available to all customers throughout the country"); *3D Sys., Inc. v. Aarotech Labs., Inc.*, 160 F.3d 1373, 1380 (Fed. Cir. 1998) (though defendant maintained a website viewable in California and forwarded e-mail responses to that site, court found "Aarotech directed no activity toward the residents of California").

Moreover, interconnecting national or international networks through assets in Texas does not support personal jurisdiction. *See Access Telecom, Inc. v. MCI Telecomms. Corp.*, 197 F.3d 694, 717-718 (5th Cir. 1999). In *Access Telecom*, Telmex interconnected its Mexican lines with American lines and even leased lines from Texas to Arizona. Holding that the line leasing was "for the purpose of connecting two points in Mexico and [did] not constitute doing business in Texas," the *Access Telecom* court reiterated that it was "bound by *Applewhite v. Metro Aviation, Inc.*, 875 F.2d 491 (5th Cir. 1989), in which such interconnections, even though crossing the border into a forum, were held insufficient to confer general jurisdiction under the Due Process Clause." 197 F. 3d at 717-18 (citation omitted). *Applewhite* held that a Mississippi court could not exercise jurisdiction over Alabama Power despite extensive interconnection and interoperation arrangements it had with Mississippi Power.

10

CoxCom's POP node is not directed to any Texas resident.  As to the computer servers themselves or purchasing related services such as space for locating the servers, controlling Supreme Court authority has held that purchases and ownership of assets (even real property) is not enough to support jurisdiction.  *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408 (1984) ("mere purchases, even if occurring at regular intervals, are not enough to warrant a State's assertion of  . . . jurisdiction over a nonresident corporation in a cause of action not related to those purchase transactions"); *Shaffer v. Heitner*, 433 U.S. 186, 213 (1977) (ownership of property in forum state unrelated to claim did not support jurisdiction).

CoxCom does not offer or otherwise provide in Texas the cable television services, high speed Internet services, or voice over internet protocol ("VoIP") services alleged to infringe the patents at suit.  (Spalding Decl. ¶¶ 4-5.)  That is, CoxCom does not make, use or sell the accused technology in Texas.  Plaintiff, therefore, cannot demonstrate any facts that could meet its burden of showing that its claims arise out of or relate to CoxCom's alleged, but unproven, actions in Texas.  As a result, there can be no specific personal jurisdiction.

Finally, the Court must consider the reasonableness and fairness of subjecting CoxCom to jurisdiction in this case under the circumstances presented.  CoxCom simply does not operate its business or provide cable services in Texas.  Its witnesses and documents are located in other states where its operations are conducted.  By contrast, Rembrandt's only business is to purchase and enforce patents.  It has acted to enforce such patent rights in various districts, including by filing five lawsuits involving all or one of the patents in suit in the District of Delaware – the place of CoxCom's incorporation.  Dismissal of this case is

11

thus fair and reasonable under circumstances where Rembrandt can press its claims in

Delaware or another venue where CoxCom's operations are actually located.

## V. CONCLUSION

For the reasons stated above, Defendant CoxCom, Inc. respectfully requests that the

Court grant its Motion to Dismiss Plaintiff's Complaint Pursuant to Rule 12(b)(2).

Dated:  December 14, 2006                    Respectfully submitted,

*/s/ Mitchell G. Stockwell*
<u>with permission Michael E. Jones</u>
Mitchell G. Stockwell
Lead Attorney
Georgia Bar No. 682912
MStockwell@KilpatrickStockton.com
KILPATRICK STOCKTON LLP
1100 Peachtree St NE
Suite 2800
Atlanta GA  30309-4530
Telephone:  404-815-6214
Facsimile:   404-815-6555

Michael E. Jones
State Bar No. 10929400
mikejones@potterminton.com
Allen F. Gardner
State Bar No. 24043679
allengardner@potterminton.com
POTTER MINTON
A Professional Corporation
110 N. College, Suite 500 (75702)
PO Box 359
Tyler, Texas  75710
Telephone:  903-597-8311
Facsimile:  903-593-0846

***Attorneys for CoxCom, Inc.***

12

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of DEFENDANT COXCOM, INC.'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT PURSUANT TO RULE 12(b)(2) AND BRIEF IN SUPPORT THEREOF was filed electronically in compliance with Local Rule CV-5(a) and contemporaneously served upon all counsel who have consented to electronic service on this the 14th day of December, 2006.  Other counsel shall be served by first class mail.

*/s/ Michael E. Jones*
Michael E. Jones

13

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| USA VIDEO TECHNOLOGY CORPORATION, | § § § | |
| *Plaintiff*, | § § | Civil Action No. 2:06-CV-239 |
| v. | § § | JUDGE RON CLARK |
| TIME WARNER CABLE, INC.; COX COMMUNICATIONS, INC.; CHARTER COMMUNICATIONS, INC.; COMCAST CABLE COMMUNICATIONS, LLC; COMCAST OF RICHARDSON, LP; COMCAST OF PLANO, LP; COMCAST OF DALLAS, LP, | § § § § § § § § | |
| *Defendants*. | § | |

**ORDER ON DEFENDANT'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND PLAINTIFF'S MOTION TO AMEND**

Defendant Cox Communications, Inc. ("Cox") filed a Motion to Dismiss for Lack of Personal Jurisdiction or, in the Alternative, to Transfer Venue to the District of Delaware [Doc. # 32]. In response, Plaintiff argued that it needed limited discovery on the issue of personal jurisdiction. Plaintiff also filed a Motion for Leave to Amend [Doc. # 42] to join a subsidiary of Cox, CoxCom, Inc. ("CoxCom"), and asked for discovery on the relationship between Cox and CoxCom.

This court allowed limited discovery on these issues. *See* Order on Defendant's Motion to Dismiss for Lack of Personal Jurisdiction [Doc. # 53]. Both parties have submitted supplemental briefing on these motions. Based on the evidence presented, Cox and CoxCom lack sufficient contacts with Texas for this court to exercise jurisdiction over them. Normally,

EXHIBIT 1

when the court lacks personal jurisdiction over a party, the court can dismiss the party or transfer

to a court which has personal jurisdiction. Cox requests that this case be transferred to Delaware.

The court will sever Plaintiff's claims against Cox and grant Cox's request to transfer to

the District of Delaware. The court also finds that the joinder of CoxCom is not warranted.

## I. Background

Plaintiff USA Video Technology ("USVO") alleges that the Defendants infringe Claim 1

of U.S. Patent No. 5,130,792 (the ` 792 patent). The ` 792 patent teaches a method for

communicating video programs to remote locations over selected commercial telephone

networks. This "video-on-demand" process allows a customer to obtain a video program

whenever a customer requests it.

Cox maintains that Plaintiff has sued the wrong company because Cox does not provide

"video-on-demand" services and Cox does not own or operate a cable system in Texas. Cox also

states that its affiliate CoxCom does not sell or market any products in Texas. After suit was

filed here, CoxCom filed a declaratory judgment action in Delaware against USVO. Cox itself

has not joined in the action in Delaware.

## II. Law and Analysis

### A. Personal Jurisdiction over Cox

#### 1. Standard of Review for Personal Jurisdiction

Because this a patent case, this court applies the law of the Federal Circuit, rather than

that of regional circuits, to determine whether personal jurisdiction exists. *Electronics For

Imaging, Inc. v. Coyle*, 340 F.3d 1344, 1348 (Fed. Cir. 2003). There are two types of personal

jurisdiction – specific and general. *Id.* at 1349. Under general jurisdiction, the exercise of

2

jurisdiction is proper where the defendant has continuous and systematic contacts with the forum

state, even if those contacts are not related to the cause of action. *Id.* at 1349. However, these

contacts must be "so substantial and of such a nature as to justify suit against [the defendant] on

causes of action arising from dealings entirely different from those activities." *International*

*Shoe Co. v. Washington*, 326 U.S. 310, 318, 66 S.Ct. 154, 159 (1945).

Determining whether specific personal jurisdiction over a nonresident defendant is proper

entails two inquiries: (1) whether the long-arm statute of the forum state confers personal

jurisdiction over the defendant; and (2) whether the exercise of such jurisdiction by the forum

state is consistent with due process. *Id* at 1349.[1] Texas' long arm statute has been interpreted to

extend to the limits of due process. *Schlobohm v. Schapiro*, 784 S.W.2d 355, 357 (Tex. 1990).

Therefore, the question is whether Defendant's contacts with the State are sufficient to satisfy

due process. *Electronics For Imaging, Inc.*, 340 F.3d at 1350.

Whether due process is satisfied requires the court to consider whether Defendant has

certain "minimum contacts" with the forum state, and whether the exercise of jurisdiction would

offend traditional notions of fair play and substantial justice. *Electronics For Imaging, Inc.*, 340

F.3d at 1350. In making this determination, the Federal Circuit has stated that three factors must

be considered: (1) whether the defendant purposefully directed its activities at the residents of the

forum state, (2) whether the claim arises out of or relates to those activities, and (3) whether

assertion of personal jurisdiction is reasonable and fair. *Id.* The first two factors correspond with

---

[1]The Federal Circuit has stated "the question of which Due Process Clause controls the
personal jurisdiction inquiry becomes purely academic because this court, though professing
reliance on the Fifth Amendment, applies the Fourteenth Amendment state-contacts test of
*International Shoe*." *Red Wing Shoe Co., Inc. v. Hockerson-Halberstadt, Inc.*, 148 F.3d 1355,
1358 n.*. (Fed. Cir. 1998).

the "minium contacts" analysis and the third factor corresponds with the traditional notions of fair play and substantial justice. *Id.* Plaintiff bears the initial burden to prove a prima facie case that Defendant has minimum contacts with the forum state. *Id.* Defendant bears the burden to show that the exercise of jurisdiction would violate the traditional notations of fair play and substantial justice. *Id.*

## 2. Cox's Contacts

In this court's prior order allowing Plaintiff discovery on the issue of personal jurisdiction, the court pointed out that Plaintiff had failed to show the nature and extent of Cox's contacts with Texas. After limited discovery, Plaintiff still has not presented any evidence which suggests that Cox has continuous and systematic contacts with Texas (for general jurisdiction), or that Cox marketed or sold any of the accused services or products in Texas (for specific jurisdiction). In fact, Plaintiff admits that Cox appears to have no ties to Texas.

Plaintiff suggests that the contacts of Cox's affiliates may be attributed to Cox for the purposes of establishing minimum contacts with Texas. Contacts may be attributed when a parent company totally dominates and controls its subsidiary, operating the subsidiary as its business conduit or agent. *See U.S. v. Jon-T Chemicals, Inc.*, 768 F.2d 686, 691 (5th Cir. 1985).[2] Even assuming that one of Cox's affiliates has sufficient contacts with Texas to establish a basis for jurisdiction, Plaintiff has not argued, or come forward with any evidence to show, that Cox totally dominates and controls any of its subsidiaries or affiliates. Plaintiff has not suggested that any additional discovery is needed. The court will grant Cox's request to transfer.

---

[2]In analyzing whether the contacts of an affiliate are imputed to another entity, the Federal Circuit follows the law of other courts of appeals. *Insituform Techs., Inc. v. CAT Contracting, Inc.*, 385 F.3d 1380, 1380 (Fed. Cir. 2004).

**C. Joinder of CoxCom**

1. Standard of Review for Joinder

Under Fed. R. Civ. P. 21, "[p]arties may be dropped or added by order of the court on motion of any party or of its own initiative at any stage of the action and on such terms as are just." In applying Rule 21, the court is governed by the liberal amendment standards of Rule 15(a). *See McLellan v. Miss. Power & Light*, 526 F.2d 870, 873 (5th Cir. 1976).[3]   Under Rule 15(a), the court should grant leave "freely" and there is a strong bias in favor of granting leave to amend. *Lyn-Lea Travel Corp. v. American Airlines, Inc.*, 283 F.3d 282, 286 (5th Cir. 2002). A district court may consider various factors in determining whether to allow leave to amend. *Little v. Liquid Air Corp.*, 952 F.2d 841, 846 (5th Cir. 1992). These factors include undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by an amendment previously allowed, undue prejudice to the other party, and futility of the amendment. *Jacobsen v. Osborne*, 133 F.3d 315, 318 (5th Cir. 1998). Denial may be based upon futility alone. *Id.* at 320.

2. Futility of Joinder

Cox argues that joinder of CoxCom is futile because the evidence before the court shows that this court cannot exercise personal jurisdiction over CoxCom.

 a. General Jurisdiction

Plaintiff states that CoxCom has continuous and systematic general business contacts

_____

_____

[3]The Federal Circuit has stated that a decision on whether to grant or deny a motion for leave to join a party is governed by the law of the regional circuit. *See Insituform Technologies, Inc. v. CAT Contracting, Inc.*, 385 F.3d 1360, 1372 (Fed. Cir. 2004).

with Texas because CoxCom owns and operates a Point of Presence ("POP") in Dallas, Texas. This POP is a transport backbone node for a national IP network and is located in leased office space in Dallas. The POP consists of a network of circuits and equipment for connecting internet protocol traffic traveling across the nation to and from CoxCom's systems located outside of Texas. It is undisputed that the node operates only to carry internet protocol traffic through Texas, not to any Texas residents. In fact, there is no evidence to suggest that CoxCom does any business in Texas at all.

While the Federal Circuit has not directly addressed this issue, the Fifth Circuit has stated that interconnections, even though crossing the border into a forum, are insufficient by themselves to confer general jurisdiction. *See Access Telecom, Inc. v. MCI Telecomms. Corp.*, 197 F.3d 694, 718 (5th Cir. 1999). The court finds this reasoning persuasive. The POP only operates to transfer digitized packets of information as part of a national network, and is not directly related to any business activity in Texas. This is not the type of activity which is so substantial and of such a nature to justify the exercise of general jurisdiction. S*ee International Shoe*, 326 U.S. at 318, 66 S.Ct. at 159.

Moreover, there are no permanent employees in Dallas, and CoxCom employees only occasionally service the equipment in Dallas. These occasional visits by employees are insufficient to establish a basis for general jurisdiction. *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414-18, 104 S.Ct. 1868, 1872-74 (1984). Additionally, the mere renting or ownership of property in a forum is not enough to confer jurisdiction when that property is not used to conduct business in the forum. *See Shaffer v. Heitner*, 433 U.S. 186, 212, 97 S.Ct. 2569, 2584 (1977). Plaintiff has not argued, and there is no evidence to suggest, that the

6

property in Dallas (i.e. servers and routers) was used to conduct business in Texas.  On the record before it, the court finds that the POP is insufficient to establish a basis for general jurisdiction.

### b. Specific Jurisdiction

To establish specific jurisdiction, there must be some evidence that the claims arise out of or relate to the contacts with Texas. *Electronics For Imaging, Inc.*, 340 F.3d at 1350.  Plaintiff has accused Defendants' "video on demand" cable television services as infringing on the `792 patent.   It is undisputed that CoxCom no longer offers "video on demand" services in Texas, and that the POP is not part of CoxCom's cable television services.  Therefore, the alleged contact with Texas, internet traffic passing through a POP, cannot be related to Plaintiff's claims of offering "video on demand" services to Texas residents.  The court concludes that there is no basis for specific jurisdiction over CoxCom.

Plaintiff has not asked for any additional discovery or suggested that any other contacts with Texas exist. Because the evidence before the court shows that this court lacks personal jurisdiction over CoxCom, the court concludes that joinder would be futile and is not warranted. *See Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 584, 119 S.Ct. 1563, 1570 (1999)(personal jurisdiction is an essential element of the jurisdiction of a district court "without which the court is powerless to proceed to an adjudication.").

### III. Conclusion

After discovery, Plaintiff failed to come forward with any evidence to show that this court could exercise jurisdiction over Cox Communications, Inc.  The evidence before the court also shows that the joinder of CoxCom, Inc. would be futile because CoxCom, Inc. does not have sufficient contacts with Texas such that this court can exercise jurisdiction over it.

7

IT IS THEREFORE ORDERED that Defendant Cox Communications, Inc.'s Motion to Dismiss for Lack of Personal Jurisdiction or, in the Alternative, to Transfer Venue to the District of Delaware [**Doc. # 32**] is **GRANTED IN PART**.  USA Video Technology's claims against Cox Communications, Inc. are **SEVERED** and **TRANSFERRED** to the United States District Court for the District of Delaware.  The Clerk shall send a copy of this Order to the Clerk of the United States District Court for the District of Delaware

IT IS FURTHER ORDERED that Plaintiff's Motion for Leave to Amend [**Doc. # 42**] is **DENIED**.

So **ORDERED** and **SIGNED** this **1**   day of **November, 2006.**

_____
Ron Clark, United States District Judge

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

REMBRANDT TECHNOLOGIES, LP.

                Plaintiff,

    v.

CHARTER COMMUNICATIONS. INC.,
CHARTER COMMUNICATIONS
OPERATING, LLC. COXCOM. INC., CSC
HOLDINGS. INC.. and CABLEVISION
SYSTEMS CORPORATION,

                Defendants.

CASE NO. 2-06CV-223 TJW

## DECLARATION OF JOHN SPALDING IN SUPPORT OF DEFENDANT COXCOM, INC.'S MOTION TO DISMISS PURSUANT TO RULE 12(b)(2)

1.    I, John Spalding. am a Vice President of CoxCom. Inc. My responsibilities include oversight of government affairs matters.

2.    CoxCom is incorporated in Delaware and maintains its principal place of business in Atlanta, Georgia. CoxCom is a subsidiary/affiliate of Cox Communications. Inc.

3.    CoxCom is not registered to do business in Texas. CoxCom does not maintain any place of business. maintain any office. or keep any corporate books or records in Texas.

4.    CoxCom is an operational entity which owns and operates cable systems. However, it does not currently own or operate any cable systems in Texas and does not provide any cable television. internet, or telephone services in Texas. CoxCom does not

EXHIBIT 2

provide goods or services to any customers in Texas, and does not derive revenues from Texas.

5. CoxCom's only contact with Texas is an internet backbone node. This Point of Presence (POP) node consists of servers and routing equipment located in leased space in Dallas. The node carries internet protocol traffic for the company's national network. The POP node does not relate to the DOCSIS communications that occur between a cable modem and the cable modem termination system (CMTS) in the headend.

6. CoxCom has no employees based in Texas. All CoxCom engineers and service technicians for the POP node are located outside of Texas.

7. With the exception of the POP node, all assets of CoxCom that were located in Texas were assigned to Cox Southwest Holdings, L.P. ("Cox Southwest") on or about December 31, 2003/January 1, 2004. Thereafter, with the sole exception of a cable television franchise located in Henderson, Texas, Cox Southwest sold all of its assets to Cebridge Acquisition, L.P. ("Cebridge"). Cox Southwest is an entity separate from CoxCom and maintains its own corporate formalities, including books, records, boards and corporate structure.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this the 14th day of December 2006.

       John Spalding

2

About    The Acquisition Process    The Rembrandt Story    Meet our Peopl
FAQs    Famous Patent Infringement Cases    Working with Rembrandt

**R**

**REMBRANDT**
*Drawn to Invention*

# Patent Infringement Solutions



**Rembrandt:** *Drawn to Invention.*

We offer supreme service and ample funding to pursue exploitation and licensing of Intellectual Property for companies and inventors that require solid resources.

About | The Acquisition Process | The Rembrandt Story | Meet our People | FAQs | Famous Patent Infringement Cases
Working with Rembrandt | Contact Rembrandt | Site Map

Copyright © 2006 Rembrandt IP Management, LLC

EXHIBIT 3





## About

### Rembrandt
*Drawn to Invention*

Rembrandt delivers value for an inventor's invention. The company shoulders the leg financial, and business risks associated with pursuing patent pirates and provides the capital and expertise required to litigate complex patent infringements.

Rembrandt acquires promising patents from inventors and innovative companies that can't defend their patents against infringement because of the cost of litigation or the threat of business or legal retaliation.

The firm's staff of in-house professionals and outside consultants includes scientists, inventors, financial analysts, lawyers, and researchers who are expert at identifying t validity and market value of patents and Intellectual Property (IP), and securing revenue for these inventors and companies as well as Rembrandt's investors.

Rembrandt invests its capital to acquire patents and pursue infringement. The compa distinguishes itself through the quality of patents it acquires and the ability to pursue patent infringement, regardless of the size or sophistication of the infringer. The company has raised $150 million to acquire patents and litigate patent infringement.

Rembrandt's financial resources, deep expertise, and commitment to innovation prov inventors and companies the ability to level the patent playing field and see value fro their inspiration, ideas and IP.

*Navigation menu (left):*
- **About**
- The Acquisition Process
- The Rembrandt Story
- Meet our People
- FAQs
- Famous Patent Infringement Cases
- Working with Rembrandt

---

About | The Acquisition Process | The Rembrandt Story | Meet our People | FAQs | Famous Patent Infringement Cases
Working with Rembrandt | Contact Rembrandt | Site Map

Copyright © 2006 Rembrandt IP Management, LLC



# R

**REMBRANDT**
*Drawn to Invention*



*fig. 2*

**About**

➡ **The Acquisition Process**

**The Rembrandt Story**

**Meet our People**

**FAQs**

**Famous Patent Infringement Cases**

**Working with Rembrandt**

## The Acquisition Process

Rembrandt works as a partner to help inventors realize value for their inventions. The people who comprise Rembrandt are unique in that they understand the psyche of inventors and work intimately with them to defend their innovations and secure reve for their efforts.

The process begins with a scientific and legal review of a patent. The Rembrandt business model is to acquire strong patents that hold real market promise. Rembrand accepts a small percentage of the patents it reviews.

Prior to being acquired, all patents are reviewed by Rembrandt's executive staff, hea by the company's Chief Executive Officer Paul B. Schneck, Ph.D. An internationally acclaimed scientist, Dr. Schneck has 40 years of experience in applied and theoretica sciences in fields as diverse as aerospace, supercomputing, parallel processing, and digital IP anti-pirating technologies. For his laboratory's work for The National Securit Agency, Dr. Schneck was awarded the Foreign Intelligence Community's Seal Medalli for exceptional contribution.

Once a patent qualifies, Rembrandt then works with the owner to structure the acquisition. When inventors sell patents or patent portfolios to Rembrandt, they bene from legal, scientific, and business expertise, which Rembrandt deploys to build, strengthen, articulate, and focus the claim.

Where appropriate, Rembrandt then pursues revenue opportunities by initiating pate litigation against infringing companies. As part of that effort, Rembrandt invests its o capital to retain top-tier legal counsel from firms located across the country, typically a non-contingency basis. Non-contingency relationships align interests and provide tl staying power and focus needed to fully pursue legitimate legal claims.

The revenue Rembrandt secures from infringers of the acquired patent is typically shared with the former patent owner, Rembrandt investors and The Rembrandt Foundation, a charitable organization dedicated to improving primary education throughout America.

---

About | The Acquisition Process | The Rembrandt Story | Meet our People | FAQs | Famous Patent Infringement Cases
Working with Rembrandt | Contact Rembrandt | Site Map

Copyright © 2006 Rembrandt IP Management, LLC



# R

## REMBRANDT
*Drawn to Invention*



*fig 2*

**About**

**The Acquisition Process**

➡ **The Rembrandt Story**

**Meet our People**

**FAQs**

**Famous Patent Infringement Cases**

**Working with Rembrandt**

## The Rembrandt Story

Founded in 2004, Rembrandt was started by scientists, investors and businesspeople who realized that for myriad reasons many inventors and companies are unable to obtain the true value of their innovations and the patents that protect them.

Costly and lengthy litigation, coupled with business or legal retaliation, has tilted the playing field against small inventors and patent holders in favor of infringers. The situation threatens the very foundation of U.S. patent law, as established in Article 1 Section 8 of the U.S. Constitution.

Under U.S. patent law, inventors agree to disclose their innovations to the public in exchange for a period of exclusivity, during which time others cannot market the invention without permission, i.e. a license.

Infringers or patent pirates use public disclosure to discover and steal new ideas and unjustly benefit from these innovations at the very time the inventor is most at risk. patent holders cannot monetize their invention when competition is restricted, they r never recoup their investment or see revenue once exclusivity expires.

Patent pirates rob others of the fruits of their ingenuity, eliminate incentives to inven and wrongly reward those not responsible for the invention. Long term, the American economy suffers. Without protection, inventors will opt to either keep their invention secret, which denies others access to their innovation, or they simply will stop invent due to the lack of compensation for their ideas and innovations.

Rembrandt provides the means for inventors and companies to secure the value of th innovations, and realize the great promise extended to them in the U.S. Constitution that inventors will receive exclusivity in exchange for disclosing their invention throu a patent.

Under the direction of Dr. Paul B. Schneck, Rembrandt identifies and acquires patent that hold great market potential, pursues and secures revenue from these innovation as established by the U.S. Constitution.

The founding director of the Supercomputing Research Center, Dr. Schneck is an internationally accomplished scientist, an Elected ACM and IEEE Fellow as well as an inventor with two issued patents, whose areas of scientific expertise range from supercomputing to digital IP anti-pirating technologies.

---

About | The Acquisition Process | The Rembrandt Story | Meet our People | FAQs | Famous Patent Infringement Cases
Working with Rembrandt | Contact Rembrandt | Site Map

Copyright © 2006 Rembrandt IP Management, LLC





## REMBRANDT
*Drawn to Invention*

**About**

**The Acquisition
Process**

**The Rembrandt
Story**

**Meet our People**

**FAQs**

**Famous Patent
Infringement Cases**

➡ **Working with
Rembrandt**

# Working with Rembrandt

If your patent or portfolio of patents is being infringed, Rembrandts stands ready to pursue the infringement and allow you to see the real value of your invention. Our process is comprehensive. There is no fee to patent holders. Simply:

1. Click here to notify one of our market analysts of the nature of the infringeme[?] infringement@rembrandtfund.com or call us at 888-736-4947.

2. Once you notify us, we will immediately issue you a non-disclosure so that we can begin to collaborate with regard to the nature of the infringement.

3. After review, we will notify you of our opinion regarding your patent and the implications of the infringement. All patents are reviewed by Rembrandt's executive staff, headed by the company's Chief Executive Officer Paul B. Schneck, Ph.D.

4. If your patent is accepted, we will work with you to acquire the patent and structure the terms of the deal.

5. Once acquired, Rembrandt's in-house staff and outside consultants go to wor[?] building, strengthening, articulating and focusing the claim.

6. Throughout the procedure, Rembrandt collaborates closely with inventors to keep them apprised of the process.

7. Rembrandt invests its own capital to retain non-contingency legal support in order to pursue patent pirates and deliver the value of an invention to an inventor.

8. Rembrandt attorneys bring litigation against patent pirates and support the cl[?] through litigation including possible appeals.

9. Awards and settlements are shared with the inventor, Rembrandts investors a[?] the Rembrandt charity.

---

About | The Acquisition Process | The Rembrandt Story | Meet our People | FAQs | Famous Patent Infringement Cases
Working with Rembrandt | Contact Rembrandt | Site Map

Copyright © 2006 Rembrandt IP Management, LLC

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| REMBRANDT TECHNOLOGIES, LP,<br><br>          Plaintiff,<br><br>   v.<br><br>CHARTER COMMUNICATIONS, INC.,<br>CHARTER COMMUNICATIONS<br>OPERATING, LLC, COXCOM, INC., CSC<br>HOLDINGS, INC., and CABLEVISION<br>SYSTEMS CORPORATION,<br><br>          Defendants. | CASE NO. 2-06CV-223 TJW |

**ORDER GRANTING DEFENDANT COXCOM, INC.'S MOTION TO DISMISS
PLAINTIFF'S COMPLAINT PURSUANT TO RULE 12(b)(2)**

ON THIS DAY, came on to be considered CoxCom's Motion to Dismiss Plaintiff's
Complaint Pursuant to Rule 12(b)(2) and Brief in Support in the above-styled and numbered cause.
After considering said motion and briefing, the Court is of the opinion that said motion should be
GRANTED.

IT IS THEREFORE ORDERED that CoxCom's Motion to Dismiss Plaintiff's Complaint
Pursuant to Rule 12(b)(2) is hereby GRANTED.