IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| **REMBRANDT TECHNOLOGIES, LP,** | § § § | |
| Plaintiff, | § | |
| v. | § § | **CASE NO. 2:06-CV-223 [TJW]**<br>**JURY TRIAL REQUESTED** |
| **CHARTER COMMUNICATIONS, INC., CHARTER COMMUNICATIONS OPERATING, LLC, COX COMMUNICATIONS, INC., COXCOM, INC., COX ENTERPRISES, INC., CSC HOLDINGS, INC. AND CABLEVISION SYSTEMS CORPORATION,** | § § § § § § § § § | |
| Defendants. | § | |

**REMBRANDT TECHNOLOGIES, LP'S OPPOSITION TO COXCOM INC.'S MOTION TO DISMISS COMPLAINT FOR LACK OF PERSONAL JURISDICTION <u>AND SUPPORTING MEMORANDUM</u>**

Plaintiff Rembrandt Technologies, LP ("Rembrandt") files this its Opposition To Defendant CoxCom, Inc.'s Motion To Dismiss Plaintiff's Complaint Pursuant To Rule 12(b)(2) ("Motion") and in support thereof respectfully shows the Court the following:

## I. **INTRODUCTION**

On June 1, 2006, Rembrandt filed this action for patent infringement against, among others, three Cox Group entities: Cox Communications, Inc. ("Cox Communications" or "Cox"), Cox Enterprises, Inc. ("Cox Enterprises"), and CoxCom, Inc. ("CoxCom") (collectively, the "Cox Defendants"). In August 2006, counsel for the Cox Defendants contacted counsel for Rembrandt and asked that Rembrandt consider voluntarily dismissing Cox Enterprises and Cox Communications on the grounds that (i) the Court does not have personal jurisdiction over Cox Enterprises and Cox Communications and (ii) CoxCom is the Cox entity that operates and/or oversees the various cable businesses and franchises. The discussions led to an August 25, 2006 letter between Rembrandt and the Cox Defendants setting out certain stipulations regarding CoxCom (the "Agreement"):

1. "CoxCom is the proper Cox entity to respond to the claims asserted by Rembrandt in this case . . . ."

2. "Rembrandt can assert its current infringement claims against, and reach, all of Cox's cable operations through CoxCom."

3. "Rembrandt does not need to add any Cox entities or affiliates to this suit to be able to assert its infringement claims against Cox's cable operations."[1]

Pursuant to and subject to the stipulations contained in the Agreement, Rembrandt moved to dismiss Cox Communications and Cox Enterprises from this action, and on September 18, 2006, the Court dismissed, without prejudice, the allegations against Cox Communications and Cox Enterprises.

---

[1] Carter Aff. ¶¶2, 3 and Exh. A (Agreement).

This Court has personal jurisdiction (both specific and general) over CoxCom. CoxCom admits that various Cox entities, including itself, have owned and operated cable businesses in Texas up to May 2006, and that Cox Southwest Holdings, L.P., ("Cox Southwest"), a Cox subsidiary and affiliate of CoxCom, continues to own at least one cable franchise in Henderson, Texas. Rembrandt's claims of patent infringement in this case arise out of those cable operations and provide the Court with specific personal jurisdiction. These cable operations, which date back to 1970, also constitute continuous and systematic contacts with Texas and provide the Court with general jurisdiction. The fact that the Cox entities may have sold most of their Texas cable assets just prior to Rembrandt's filing of this suit is immaterial. Various Cox entities, including CoxCom, performed the infringing acts in Texas and, at the time of those acts, had purposeful and systematic contacts with Texas.[2] Based on those contacts and the Agreement, it is not unfair to require CoxCom to defend this action before this Court.

## II. ARGUMENT AND AUTHORITIES

A. **APPLICABLE LEGAL STANDARDS**

Because this is a patent case, this Court applies Federal Circuit law to determine whether personal jurisdiction exists.[3] The Federal Circuit defers to the Texas Supreme Court to interpret

---

[2] CoxCom has not moved to dismiss based on improper venue. Therefore, Rembrandt must show that CoxCom has "minimum contacts" with Texas, not specifically with the Eastern District of Texas. *International Shoe Co. v. Washington*, 326 U.S. 310, 316, S. Ct. 154 (1945) (jurisdiction exists because defendant has "minimum contacts" with state); *see also*, *Neirbo Co. v. Bethlehem Shipbuilding Corp.*, 308 U.S. 165, 167-168, 60 S. Ct. 153 (1939) (jurisdiction is court's power to adjudicate; venue relates only to where court should adjudicate). As will be seen, CoxCom's contacts with the Eastern District are sufficient for venue.

[3] *Rates Technology Inc. v. Nortel Networks Corp.*, 399 F.3d 1302, 1307 (Fed. Cir. 2005) writ denied 125 S. Ct. 2981 (2005); *Electronics For Imaging, Inc. v. Coyle*, 340 F.3d 1344, 1348 (Fed. Cir. 2003), *writ denied* 540 U.S. 1111, 124 S. Ct. 1085 (2004).

whether a non-resident defendant is amenable to process in Texas.[4] The Texas long-arm statute reaches as far as the federal constitutional requirements of due process will allow.[5] Thus, the question here is whether the contacts of CoxCom and its affiliates are sufficient to satisfy federal due process.

Whether due process is satisfied requires the Court to consider whether CoxCom has certain "minimum contacts" with the State of Texas, and whether the exercise of jurisdiction would offend traditional notions of fair play and substantial justice.[6] Under the "minimum contacts" test, a defendant may be subject to either specific jurisdiction or general jurisdiction. In general, there must be some act or acts by which a defendant purposefully avails itself of the privilege of conducting activities with the forum State, thus invoking the benefits and protections of its laws, such that it is presumptively not unreasonable to require the defendant to submit to the burdens of litigation in that forum as well.[7]

Rembrandt bears the initial burden to prove that CoxCom has "minimum contacts" with Texas.[8] In the preliminary stages of litigation this burden is light,[9] (though, as demonstrated below, Rembrandt easily meets its burden in this case). When the parties have not conducted discovery, the plaintiff need only make a *prima facie* showing that the defendant is subject to

---

[4] *LSI Industries Inc. v. Hubbell Lighting, Inc.*, 232 F.3d 1369, 1371 (Fed. Cir. 2000).

[5] *CSR, Ltd. v. Link*, 925 S.W.2d 591, 594 (Tex. 1996) (orig. proceeding).

[6] *Elecs. For Imaging*, 340 F.3d at 1350.

[7] *Id.* at 1349, *citing Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475, 105 S.Ct. 2174 (1985).*

[8] *McNutt v. Gen. Motors*, 298 U.S. 178, 189, 56 S. Ct. 780 (1936); *Elecs. For Imaging*, 340 F.3d at 1350.

[9] *Doe v. National Medical Servs.*, 974 F.2d 143, 145 (10th Cir. 1992).

personal jurisdiction.[10] A plaintiff need only demonstrate facts that, if true, would support jurisdiction over the defendant.[11] In deciding whether the plaintiff has made such a showing, the pleadings and affidavits must be construed in the light most favorable to the plaintiff.[12] The court must draw all reasonable inferences arising from the proof, and resolve all factual disputes in the plaintiff's favor.[13] Unless *directly* controverted by the defendant's affidavits, the plaintiff's version of the facts, including allegations in the complaint, must be taken as true.[14]

CoxCom bears the burden of proving that jurisdiction is constitutionally unreasonable.[15] Where a defendant who purposefully has directed activities at forum residents seeks to defeat jurisdiction, he must present a compelling case that the presence of other considerations would render jurisdiction unreasonable.[16] It is a rare case in which sufficient minimum contacts exists, but the exercise of jurisdiction would be unreasonable.[17]

---

[10] *Trintec Indus. v. Pedre Promotional Prods.*, 395 F.3d 1275, 1283 (Fed. Cir. 2005). If the court concludes that the record is insufficient to support personal jurisdiction, Rembrandt is entitled to jurisdictional discovery. *Id.*

[11] *Elecs. For Imaging*, 340 F.3d at 1349. Proof by a preponderance of the evidence is not required. *Bullion v. Gillespie*, 895 F.2d 213, 216-217 (5th Cir. 1990).

[12] *Silent Drive, Inc. v. Strong Indus.*, 326 F.3d 1194, 1201 (Fed. Cir. 2003).

[13] *Pennington Seed, Inc. v. Produce Exch. No. 299*, 457 F.3d 1334, 1338 (Fed. Cir. 2006).

[14] *Elecs. For Imaging*, 340 F.3d at 1349; *Wenz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir. 1995); *Thompson v. Chrysler Motors Corp.*, 755 F.2d 1162, 1165 (5th Cir. 1985).

[15] *3D Systems, Inc. v. Aarotech Laboratories, Inc.*, 160 F.3d 1373, 1379-80 (Fed. Cir. 1998); *Akro Corp. v. Luker*, 45 F.3d 1541, 1549 (Fed. Cir. 1995), *writ denied* 515 U.S. 1122, 115 S. Ct. 2277 (1995). CoxCom wrongly contends, misciting *Akro*, that Rembrandt bears the burden on this issue. *Akro v. Luker*, at 1549 ("[Defendant] . . incorrectly assert[s] that the burden is on Akro to show that jurisdiction is reasonable . . .").

[16] *Burger King,* 471 U.S. at 476-77; *Elecs. For Imaging*, 340 F.3d at 1351-52.

[17] *Asahi Metal Indus. Co. Ltd. v. Superior Ct. of Cal., Solano County*, 480 U.S. 102, 116, 107 S.Ct. 1026 (1987); *Beverly Hills Fan Co. v. Royal Sovereign Corp.,* 21 F.3d 1558, 1568 (Fed. Cir. 1994), *writ dism'd* 512 U.S. 1273, 115 S. Ct. 18 (1994).

As Rembrandt will show herein, it has met its burden of showing that CoxCom has sufficient contacts with Texas to support personal jurisdiction in this case. Rembrandt's cause of action arises out of those contacts (establishing specific jurisdiction) and those contacts have been continuous and systematic (establishing general jurisdiction). CoxCom, on the other hand, has failed to meet its burden of presenting a compelling case that the presence of some other considerations would render jurisdiction unreasonable.

**B.  PERSONAL JURISDICTION EXISTS BECAUSE REMBRANDT'S CLAIMS ARISE OUT OF COXCOM'S TEXAS CONTACTS AND THEY ARE CONTINUOUS AND SYSTEMATIC**

CoxCom seems to argue that since it transferred its Texas cable assets to Cox Southwest in 2003 and Cox Southwest, in turn, sold most of those assets to a third party in 2006, this Court no longer has jurisdiction over CoxCom. It is doubtful that CoxCom would have brought this motion absent those transactions. Those transactions, however, do not divest this Court of jurisdiction over wrongs CoxCom committed while it owned and operated cable assets in Texas, and the Agreement makes clear that CoxCom is the appropriate Cox entity to answer in this suit for the infringing actions of all Cox entities, including Cox Southwest.

**1.  Specific Jurisdiction Exists Because CoxCom Has Provided Infringing Cable Services In Texas**

The Federal Circuit has established a three-prong minimum contacts test for determining if specific jurisdiction exists: (1) whether the defendant purposefully directed its activities at residents of the forum, (2) whether the claim arises out of or relates to those activities, and (3) whether assertion of personal jurisdiction is reasonable and fair.[18] When a court exercises specific jurisdiction over a defendant arising out of or related to the defendant's contacts with the forum, the fair warning that due process requires arises not at the time of the suit, but when the

---

[18] *3D Systems, Inc.,*, 160 F.3d at 1378. See also *Burger King,* 471 U.S. at 472, 476-77.

events that gave rise to the suit occurred. "[O]ne cannot defeat personal jurisdiction by a move away from the state in which the underlying events took place."[19]

### a. CoxCom has Purposefully Directed Its Activities at Residents of Texas.

CoxCom is a wholly owned subsidiary of Cox. Cox, a Fortune 500 company, is a multi-service broadband communications company and the nation's third-largest cable television provider.[20] It entered the cable television business in 1962. In 1970, it acquired a cable television system in Texas and in 1987, Cox built its own internet protocol network and launched Cox High Speed Internet.[21] In 1999, Cox acquired more than 2.1 million customers, resulting in its having nearly 6 million customers in 18 states, including Texas.[22]

By December 31, 1999, CoxCom was providing cable service to more than 496,000 basic cable customers in Texas.[23] As of 2003, Cox's "core business" was delivering cable programming, serving 6.3 million customers in 22 states, including Texas; specifically, in Bryan, Tyler, Victoria, and nearby East Texas communities through its Middle America Cox ("MAC") cable systems, and in several communities in West Texas through its West Texas cable systems.[24] Between 1999 and 2006, CoxCom's West Texas and MAC[25] cable systems served hundreds of thousands of Texas customers.[26]

---

[19] *Steel v. United States*, 813 F.2d 1545, 1549 (9th Cir. 1987).

[20] Cox Press Release at 1-2, Magee Aff. ¶2, Exh. A.

[21] *See* About Cox - Our History, Magee Aff. ¶3, Exh. B.

[22] *Id.* In August 1999, Cox completed a merger with TCA Cable, a cable television operator serving 883,000 customers in Texas, Arkansas, Louisiana and four other states. Cox 1999 10-K at 39, Magee Aff. ¶4, Exh. C.

[23] *See* Cox 1999 10-K at 3-4.

[24] *See* Cox 2003 Annual Report, "Cox At A Glance," Magee Aff. ¶5, Exh. J. CoxCom has conducted extensive cable television operations in Lubbock, Texas for over thirty years. In 2000, CoxCom extended its Lubbock operations to include a regional call center. *See* Magee

Between 2000 and 2006, Cox owned a number of corporate subsidiaries that provided cable services in Texas: including, among others, Cablevision of Leander, Inc. and Cablevision of Pflugerville, Inc., d/b/a as Cox Communications, Inc.; Cox Southwest Holdings, L.P.; and CoxCom, Inc.[27]  Until as recently as December 31, 2003, CoxCom owned extensive assets situated in Texas used to operate its Texas cable television systems ("CoxCom's Texas Cable Assets").[28]  CoxCom filed tax returns in Texas while it was operating in Texas.[29]

---

Aff. ¶6, Exh. K.  As of March 2005, Cox Communications was providing VoIP services, a type of internet service, to customers in five cities in West Texas: Lubbock, Amarillo, Midland, Abilene and San Angelo.  *See* Cox "WHITEPAPER: Circuit Switch to VoIP Evolution Plan" (March 2005), at 1 & 2, Magee Aff. ¶7, Exh. L, M.  In addition to its two major cable television clusters located in Texas, Cox also owned smaller non-clustered cable systems in Texas, Oklahoma, Kansas, and Arkansas, which it sold during 2004 for $53.1 million.  Cox 2004 10-K at 41, Magee Aff. ¶4, Exh. H.

[25] MAC primarily comprised operations in Texas and two other states.  Cox 2004 10-K at 46.

[26] As an integral part of Cox's integrated broadband strategy, Cox has historically operated large local and regional cable television clusters.  In 2000 and 2002, its West Texas cable operations were one of its 12-15 largest cable television clusters, which then averaged between 300,000 and 368,000 customers per cluster.  Between 2003 and 2005, its West Texas and MAC cable operations were two of its 12 largest clusters, averaging between 425,000 and 435,000 customers per cluster during that period.  *See* Cox 1999 10-K at 1-4; Cox 2000 10-K at 1-3, Magee Aff. ¶4, Exh. D; Cox 2001 10K at 1-2, Magee Aff. ¶4 Exh. E; Cox 2002 10-K at 2-3, Magee Aff. ¶4, Exh. F; Cox 2003 10-K at 2-4, Magee Aff. ¶4, Exh. G; Cox 2004 10-K at 1-2, 46; Cox 2005 10-K at 1-2, Magee Aff. ¶4, Exh. I.

[27] Cox 1999 10-K, Ex-21; Cox 2000 10-K, Ex-21; Cox 2001 10-K, Ex-21; Cox 2002 10-K, Ex-21; Cox 2003 10-K, Ex-21; Cox 2005 10-K, Ex-21.1.  Cox's 1999-2005 10-K Annual Reports indicate that it also owned the following additional 16 Texas subsidiaries: Cox Southwest Interests, L.L.C.; Texas Community Antennas, Inc.; Cablecoupons, Inc.; Cablevision of Texas Partner, Inc.; Cox Texas Telcom, L.P.; MT Associates, Inc.; TCA Cable TV of Missouri, Inc.; TCA Communications, Inc.; TCA Holdings II, L.P.; TCA Holdings, L.P.; TCA Interests, L.L.C.; TCA Management Company; Telecable Associates, Inc.; Teleservice Corp. of America; VPI Communications, Inc.; and Williamson County Cablevision Co.  *Id.*

[28] Spalding Decl. ¶7.

[29] Spalding Dep. (USA Video case) at 49, lines 2-22, Magee Aff. ¶8, Exh. N.  Per Cox, CoxCom "operate[d] and own[ed] the assets relating to the cable television systems and other businesses doing business under" many names, including "d/b/a/ Cox Communications West Texas."  Cox 2001 10-K, Ex-21; Cox 2002 10-K, Ex-21; Cox 2003 10-K, Ex-21.

As of January 1, 2004, Cox Southwest, a Texas limited partnership and a subsidiary of Cox Communications, "assumed ownership of all of the assets of any Cox Communications, Inc.'s affiliates/subsidiaries that then owned assets in Texas."[30] Cox Southwest held those assets from January 1, 2004, until most of them were sold to Cebridge, which sale closed on May 5, 2006,[31] less than a month before Rembrandt filed this action for patent infringement against CoxCom.[32] The assets sold to Cebridge included, to use the words of CoxCom's Vice President, John Spalding, the "[a]ssets used to deliver services to our customers in Texas."[33]

While Mr. Spalding implies in his supporting declaration that Cox Southwest alone sold CoxCom's Texas Cable Assets to Cebridge, the Asset Purchase Agreement also named CoxCom and Cox Communications as "Sellers" and stated that they "own[ed] and operate[d] the cable television systems" being sold, including the West Texas system and the MAC system that served communities in East Texas.[34]

---

[30] Spalding Supp. Decl. (USA Video case) ¶4, Magee Aff. ¶9, Exh. O; Cox 2003 10-K, Ex-21.

[31] Spalding Supp. Decl. (USA Video case) ¶5.

[32] During this period, revenues from the customers of CoxCom's Texas franchises went to Cox Southwest. Spalding Dep. (USA Video case) at 18, lines 9-10.

[33] Spalding Dep. (USA Video case) at 47, lines 8-18. Cox also operates an interactive website through which it solicits orders for its cable and high-speed internet services and permits customers to pay their bills online and to obtain technical support. Magee Aff. ¶10, Exh O. This website served Texas residents; as recently as December 2006, it included pages describing the services, including cable and high-speed internet, available to Texas residents and invited them to place orders for them. The website informed them that they could pay their bills at one of Cox's retail and payment centers in 24 cities in Northeast and Southeast Texas and 12 cities in West Texas. Magee Aff. ¶10, Exh. P. CoxCom and other Cox entities purposefully used this website to carry on business with Texas residents Texas. *See Mink v. AAAA Development LLC*, 190 F.3d 333, 336 (5th Cir. 1999); *see also Revell v. Lidov*, 317 F.3d 467, 470 (5th Cir. 2002).

[34] *See* Cox 2005 10-K, Ex-2.1. Cox stated in its 2005 10K that pursuant to the Asset Purchase Agreement, it agreed to sell cable television systems with 940,000 basic cable subscribers, including Cox's MAC cable systems in East Texas as well as its West Texas cable systems, for approximately $2.55 billion. *Id*. at 1; *see also* Cox Press Release at 1, Magee Aff., Exh. A.

Even after the sale, Cox Southwest continues to own a cable franchise in Henderson, Texas and will continue to own that franchise until it expires.[35] As of January 8, 2007, Cox Communications is still listed in the Henderson Area Chamber of Commerce Member Directory as having an office at 109 N. High Street, Henderson, Texas.[36] As of January 8, 2007, Cox Communications was listed in the Henderson Area Chamber of Commerce website as a Major Employer, having a manager and 10 employees at its 109 N. High Street, Henderson location.[37]

CoxCom continues to maintain an internet node on its national internet backbone, consisting of servers and routing equipment located in leased space in Dallas, which are serviced by CoxCom engineers and service technicians. This internet node presently "carries internet traffic for CoxCom's cable systems, which are located outside of Texas."[38] For many years, Cox, CoxCom, Cox Southwest or a combination of them offered high speed internet and cable services to customers in Texas. During that time, CoxCom's internet node in Dallas was an integral part of its nationwide backbone network, transporting Cox High Speed Internet, Cox Business Internet Services, VoIP and much of Cox's long distance traffic. "The backbone interconnect[ed] all Cox markets and connect[ed] other major metropolitan hubs, including . . . Dallas" (one of its regional data centers) and was used to carry internet traffic to CoxCom's customers in Dallas, Bryan, Tyler, Abilene, San Angelo, Midland, Lubbock and Amarillo.[39]

---

[35] Spalding Decl. ¶7, Cox's Reply at 3, Magee Aff. ¶11, Exh. Q. Spalding testified in the USA Video case that Cox Southwest's "role within Cox Communications, now that its Texas affiliates have sold their assets in Texas," is that "it holds and will hold the Henderson Franchise until the franchise expires." Spalding Dep. (USA Video case) at 19, lines 13-17.

[36] *See* Henderson Area Chamber of Commerce Member Directory, Magee Aff. ¶12, Exh. R.

[37] *See* Industries & Major Employers, Henderson, Rusk County at 2, Magee Aff. ¶12, Exh. R.

[38] Motion at 3, 9-10; Spalding Decl. ¶¶5-6.

[39] *See* WHITEPAPER: Voice over Internet Protocol: Ready For Prime Time (May 2004) at 8, Magee Aff. ¶13, Exh.S, T.

### b.     Rembrandt's Claims Arise Out of CoxCom's Cable Operations.

Patent infringement occurs when a party "without authority makes, uses, offers to sell or sells any patented invention." 35 U.S.C. § 271(a).[40] Thus, for specific personal jurisdiction to exist over CoxCom, Rembrandt must simply allege that CoxCom engaged in one of those listed activities in Texas.[41] In the *Beverly Hills Fan* case, the Federal Circuit held that defendants were subject to specific personal jurisdiction because "[t]he allegations are that defendants purposefully shipped the accused [article] into Virginia through an established distribution channel. The cause of action for patent infringement is alleged to arise out of these activities. No more is usually required to establish specific jurisdiction."[42] Rembrandt's uncontroverted allegation is that CoxCom has sold infringing cable services in Texas.

### c.     It is Reasonable and Fair to Assert Personal Jurisdiction over CoxCom.

CoxCom has not met its burden of showing that defending against this action before this Court would be unreasonable.[43] The constitutional reasonableness inquiry encompasses several factors including: (1) the burden on the defendant; (2) the interests of the forum state; (3) the plaintiff's interest in obtaining relief; (4) the interstate judicial system's interest in obtaining the

---

[40] *HollyAnne Corporation v. TFT, Inc.*, 199 F.3d 1304, 1308 (Fed. Cir. 1999).

[41] *Id.*; *AdvanceMe, Inc. v. Rapidpay LLC*, 450 F. Supp. 2d 669, 673-674, 674 (E.D. Tex. 2006). Rembrandt has alleged that CoxCom has infringed each of the Patents-in-Suit in the Eastern District of Texas and elsewhere by, for example, receiving and transmitting over its cable television systems digital terrestrial broadcast signals that comply with the ATSC Digital Television Standard and by providing high speed internet services, including such services as Voice over IP ("VoIP"), to its cable television subscribers. *See* Complaint ¶¶ 11, 17, 23, 29, 35. In its supporting declaration, CoxCom did not directly controvert any of Rembrandt's allegations of infringement. Therefore, those allegations are deemed to be true for purposes of this motion. *Elecs. For Imaging*, 340 F.3d at 1349*; Wenz v. Memery Crystal*, 55 F.3d at 1505; *Thompson v. Chrysler Motors Corp.*, 755 F.2d at 1165.

[42] *Beverly Hills Fan Co.,* 21 F.3d at 1565, *citing Burger King, 471 U.S. at 472-73; Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774-75, 79 L. Ed. 2d 790, 104 S. Ct. 1473 (1984).

[43] *3D Systems, Inc.,* 160 F.3d at 1379-80; *Akro Corp. v. Luker*, 45 F.3d at 1546, 1549.

most efficient resolution of controversies; and (5) the shared interest of the several states in furthering fundamental substantive social policies.[44]

In its Motion, CoxCom addressed only the first reasonableness factor, the burden on the defendant, reiterating its contention that it does no business in Texas,[45] asserting that "its witnesses and documents are located in other states where its operations are conducted,"[46] and stating that Rembrandt has brought other patent suits in Delaware, CoxCom's place of incorporation. None of these arguments singularly or taken together satisfy CoxCom's burden.

As shown above, CoxCom and other Cox entities have provided cable services to thousands of Texans for many years. Those very services underlie Rembrandt's infringement claims and provide the Court with specific jurisdiction and are sufficiently continuous and systematic to provide the Court with general jurisdiction. The fact that Cox sold many of its Texas cable assets a few weeks before suit was filed does not relieve CoxCom of the obligation to defend its Texas actions and those of its affiliates, in a Texas court.[47]

CoxCom's reference to its documents and witnesses being located elsewhere is not availing either. It did not provide any specifics regarding the witnesses or the documents - who

---

[44] *Elecs. For Imaging*, 340 F.3d at 1352.

[45] It has been clearly demonstrated that, through a web of parent-subsidiary and affiliate relationships, CoxCom's cable operations have enjoyed a long, extensive presence in Texas. Regardless of whether it would be appropriate to pierce the corporate veil based on the current record, the existence of these close corporate relationships, their relevance to the claims asserted, and the stipulations entered into by the Cox Defendants in this case lead to the conclusion that exercise of personal jurisdiction over CoxCom in this case is fair and reasonable. *See Dainippon Screen Manufacturing Co. Ltd. v. CFMT, Inc.*, 142 F.3d 1266, 1271 (Fed. Cir. 1998).

[46] It has been long-recognized that "progress in communications and transportation has made the defense of a lawsuit in a foreign tribunal less burdensome." *World-Wide Volkswagen v. Woodson*, 444 U.S. 286, 294, 100 S. Ct. 559 (1980), *quoting Hanson v. Denckla, 357 U.S. 235, 251, 2 L. Ed. 2d 1283, 78 S. Ct. 1228 (1958)*.

[47] *Steel v. United States*, 813 F.2d at 1549 (specific jurisdiction); *Alpine View Co. Ltd. v. Atlas Copco AB*, 205 F.3d 208, 217 (5th Cir. 2000) (general jurisdiction).

they are, what they are, and why they would not be available to this Court - or provide any evidentiary support.[48]

The fact that Rembrandt has patent suits in Delaware also does not suggest that it is unfair to require CoxCom to defend this suit in Texas. In contending that it would be reasonable to dismiss this suit and force Rembrandt to file suit against it elsewhere, CoxCom misstates and reverses the burden of proof.[49] In addition, dismissing CoxCom from this suit and forcing Rembrandt to file yet another suit will not promote judicial efficiency and will create an additional burden on Rembrandt. Since CoxCom is not the only defendant in the present lawsuit, this lawsuit will continue even if CoxCom were dismissed. Therefore, granting CoxCom the relief it seeks will result in an additional suit for Rembrandt and the judicial system.

The record establishes that assertion of personal jurisdiction in this case is both fair and reasonable in all pertinent respects. Texas has a strong interest in discouraging injuries, including patent infringement, occurring within its borders. As the plaintiff, Rembrandt has a strong interest in obtaining relief. Like the plaintiff in the *AdvanceMe* case, Rembrandt chose to file in the Eastern District of Texas reasonably expecting a prompt trial date and swift, efficient resolution of the controversy. Like other states, Texas has an interest in upholding the patent

---

[48] In the context of a motion to transfer venue, which this is not, "[t]o meet the burden of demonstrating that transfer is in the convenience of the witnesses, the party seeking transfer must specifically list the evidence and witnesses on which the party intends to rely in the transferee district, along with a general statement of the topics of each witness' testimony. . . . Absent such a showing, the motion should be denied." *Pilates, Inc. v. Pilates Institute, Inc.,* 891 F. Supp. 175, 183 (S.D.N.Y. 1995). Usually, convenience of party witnesses and those closely aligned with the party is given less weight than the convenience of non-party witnesses since the former are presumed to be willing to testify in either forum. *State Street Cap. Corp. v. Dente,* 855 F. Supp. 192, 197 (S.D. Tex. 1994); *Gundle Lining Constr. Corp. v. Fireman's Fund Ins. Co.,* 844 F. Supp. 1163, 1166 (S.D. Tex. 1994). The location of documents is typically given little importance. *Pennwalt Corp. v. Purex Industries, Inc.,* 659 F. Supp. 287, 290 (D. Del. 1986).

[49] *Asahi Metal Indus.*, 480 U.S. at 116; *Burger King,* 471 U.S. at 476-77; *Elecs. For Imaging*, 340 F.3d at 1351-52; *3D Systems, Inc.*, 160 F.3d at 1379-80; *Beverly Hills Fan*, 21 F.3d at 1568.

laws of the United States. Texas, particularly given its technology sector, has an interest in promoting commerce and scientific development, which, in turn, is promoted by the patent system and the policies it embodies. Together, such considerations outweigh CoxCom's burden of litigating here. Requiring CoxCom to litigate in the Eastern District of Texas, when it has offered its allegedly infringing services here for many years, does not offend traditional notions of fair play and substantial justice.[50]

Asserting personal jurisdiction over CoxCom is also fair and reasonable because of the stipulations CoxCom made in exchange for Rembrandt dismissing its parent, Cox, from this suit and refraining from joining any other Cox entity. CoxCom stipulated that "Rembrandt can assert its current infringement claims against, and reach, all of Cox's cable operations through CoxCom" and that "Rembrandt does not need to add any Cox entities or affiliates to this suit to be able to assert its infringement claims against Cox's cable operations." In seeking dismissal of Cox Enterprises and Cox Communications on personal jurisdiction grounds, the Cox Defendants did not contend that the Court also lacked personal jurisdiction over CoxCom. The stipulations are inconsistent with such a contention. In these circumstances, requiring CoxCom to defend Rembrandt's current infringement claims in this suit before this Court would not offend traditional notions of fair play and substantial justice.

### 2. General Jurisdiction Exists Because CoxCom Has Engaged In Continuous And Systematic Contacts With Texas

General jurisdiction arises when a defendant maintains "continuous and systematic" contacts with the forum state even when the cause of action has no relation to those contacts.[51]

---

[50] *See, AdvanceMe, Inc.*, 450 F. Supp. 2d at 674.

[51] *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414-16, 104 S.Ct. 1868 (1984). Rembrandt has focused on Cox's Texas contacts relating to its patent infringement claims, which are sufficient to satisfy the requirements of federal due process; however, Cox has

**REMBRANDT'S OPPOSITION TO COXCOM'S MOTION TO DISMISS COMPLAINT -** Page 13

A court must look at the facts of each case to make such a determination.[52] When considering whether general jurisdiction exists, the court is not restricted to evaluating the defendant's contacts as they exist at the time the suit is filed. General jurisdiction may be assessed by evaluating contacts of the defendant with the forum over a reasonable number of years, up to the date the suit was filed.[53] CoxCom's extensive Texas cable television operations and other Texas contacts described above, while clearly giving rise to specific jurisdiction in this case, are also continuous and systematic and, therefore, are sufficient to establish general personal jurisdiction over CoxCom as well.[54]

### 3. The Decision In The USA Video Case Does Not Support Dismissal Here

The decision in the USA Video Technology Corporation v. Time Warner Cable, Inc., et al., Civil Action No. 2-06-CV-239-RHC case, cited by CoxCom, is not controlling. That case involved U.S. Patent No. 5130,792, which "teaches a method for communicating video programs to remote locations over selected telephone networks. This 'video on demand' process that

---

other extensive Texas contacts, including television, newspapers, radio stations, Autotrader.com, and Manheim auctions. Cox Enterprises 2005 Annual Report at 32-43, Magee Aff. ¶14, Exh. U.

[52] *LSI Industries*, 232 F.3d at 1375. Consequently, the cases cited by CoxCom are guideposts only; also, they are distinguishable because Rembrandt relies on the totality of CoxCom's contacts, rather than isolated contacts.

[53] *Alpine View*, 205 F.3d at 217. The court must examine defendant's contacts "in toto," rather in isolation from each other. Even if different contacts are independent of one another, if they occur frequently such that they are in general "continuous and systematic," there is general jurisdiction. *Access Telecom, Inc. v. MCI Telecomm. Corp.,* 197 F.3d 694, 717 (5th Cir. 1999).

[54] *C.f., LSI Industries*, 232 F.3d at 1375 (Defendant maintained "continuous and systematic" contacts with Ohio based on its millions of dollars of sales of lighting products in Ohio over past several years and its broad distribution network in Ohio). The record shows that CoxCom and other Cox affiliates have a long history of doing business in Texas; of, among other things, operating and providing cable television and internet services. Their contacts with Texas and its residents have been purposeful, continuous, and systematic.

allows a customer to obtain a video program whenever a customer requests it."[55] In that case, Cox represented that neither it nor any of its affiliates had ever offered video-on-demand services in Texas, the basis for the alleged patent infringement.[56] Tellingly, Cox admitted that "using the accused video-on-demand services within Texas could show that Cox purposefully directed its actions toward Texas residents."[57] Here, CoxCom admits that it has owned and operated cable systems in Texas.[58] It has purposefully directed actions - which are accused of infringement in this case - toward residents of Texas. The record here - the specific contacts, the continuous and systematic contacts, and the Agreement - supports jurisdiction over CoxCom.

### III. CONCLUSION

Rembrandt has clearly met its *prima facie* burden to establish that CoxCom has engaged in contacts with Texas that are continuous and systematic and from which Rembrandt's patent infringement claims arise, such that the exercise of personal jurisdiction in this case satisfies the requirements of due process. CoxCom has failed to establish a compelling case that this is a rare situation where despite the required minimum contacts, it would not be fair and reasonable to require CoxCom to litigate Rembrandt's claims in this Court. Accordingly, Rembrandt respectfully requests that the Motion be in all respects denied.

---

[55] Judge Clark's Order on Defendant's Motion to Dismiss at 2. Motion Exh. 1.

[56] USA Video Motion at 9, Magee Aff. ¶15, Exh. V.

[57] USA Video Motion at 9.

[58] Motion at 2&3.

DATED:  January 10, 2007                           Respectfully submitted,


  /s/ Sam Baxter_____
Sam Baxter
State Bar No. 01938000
**McKOOL SMITH, P.C.**
505 E. Travis, Suite 105
Marshall, Texas  75670
Telephone:  (903) 927-2111
Telecopier:  (903) 927-2622
sbaxter@mckoolsmith.com

Jeffrey A. Carter
State Bar No. 03919400
**McKOOL SMITH, P.C.**
300 Crescent Court, Suite 1500
Dallas, Texas  75201
Telephone:  (214) 978-4006
Telecopier:  (214) 978-4044
jcarter@mckoolsmith.com

Travis Gordon White
State Bar No. 21333000
**McKOOL SMITH, P.C.**
300 W. 6th Street, Suite 1700
Austin, Texas  78701
Telephone:  (512) 692-8700
Telecopier:  (512) 692-8744
gwhite@mckoolsmith.com

Robert M. Parker
State Bar No. 15498000
Robert Christopher Bunt
State Bar No. 00787165
**PARKER & BUNT, P.C.**
100 E. Ferguson, Suite 1114
Tyler, Texas  75702
Telephone:  (903) 531-3535
Telecopier:  (903) 533-9687
cbunt@cox-internet.com
rmparker@cox-internet.com

Case 2:07-cv-00243-CWS Document 56-1 Filed 06/28/2007 Page 17 of 18

>Franklin Jones, Jr.
>State Bar No. 00000055
>**JONES & JONES, INC.**
>201 W. Houston Street
>P.O. Drawer 1249
>Marshall, Texas 75670
>Telephone: (903) 938-4395
>Telecopier: (903) 938-3360
>maizieh@millerfirm.com
>
>**ATTORNEYS FOR PLAINTIFF**
>**REMBRANDT TECHNOLOGIES, LP**

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was filed electronically in compliance with Local Rule CV-5(a). As such, this document was served on all counsel who have consented to electronic service. Local Rule CV-5(a)(3)(A). Pursuant to Fed. R. Civ. P. 5(d) and Local Rule CV-5(e), all other counsel of record not deemed to have consented to electronic service were served with a true and correct copy of the foregoing by U.S. mail, on this the 10th day of January, 2007.

>/s/ Sam Baxter_____
>Sam Baxter

Case 2:07-cv-00243-CMC Document 56-1 Filed 06/28/2007 Page 18 of 18