IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| REMBRANDT TECHNOLOGIES, L.P.<br><br>Plaintiff,<br><br>v.<br><br>CHARTER COMMUNICATIONS, INC., CHARTER COMMUNICATIONS OPERATING, LLC, COX COMMUNICATIONS, INC., COXCOM, INC., COX ENTERPRISES, INC., CSC HOLDINGS, INC. and CABLEVISION SYSTEMS CORPORATION,<br><br>Defendants. | CASE NO. 2:06-CV-223 [TJW] |

**DEFENDANT COXCOM, INC.'S REPLY TO PLAINTIFF'S OPPOSITION AND FURTHER SUPPORT OF ITS MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION**

Defendant CoxCom, Inc. ("Defendant" or "CoxCom"), files this memorandum in reply to Plaintiff Rembrandt Technologies, L.P.'s ("Plaintiff" or "Rembrandt") Opposition and in further support of CoxCom's Motion to Dismiss for Lack of Personal Jurisdiction.

**I.    INTRODUCTION**

Several years ago, and before Rembrandt bought the rights to the Patents in Suit,[1] CoxCom made a business decision to stop doing business in Texas (Suppl. Decl. of John Spalding in Supp. of Def. CoxCom's Mot. to Dismiss Pursuant to Rule 12(b)(2) ¶ 1 [hereinafter Spalding Suppl. Decl.].) As a result, and contrary to the assertions made by Rembrandt in its Opposition, CoxCom has no presence in Texas but for a POP node that has nothing to do with

---

[1] Rembrandt became the assignee of U.S. Patent No. 5,243,627 (the "'627 Patent") on March 30, 2005; of U.S. Patent No. 5,852,631 (the "'631 Patent") on March 30, 2005; of U.S. Patent No. 5,719,858 (the "'858 Patent") on March 30, 2005; and of U.S. Patent No. 4,937,819 (the "'819 Patent") on February 3, 2005 (collectively, the "Patents in Suit"). A true and correct copy of the assignment chains of each of the Patents in Suit is attached hereto as Exhibit 1.

the accused activity and which, under established controlling precedent, is insufficient to establish jurisdiction. Moreover, while Cox Southwest, a subsidiary of Cox Communications, Inc., still owns (for two more months anyway) a franchise (but not the physical assets needed to operate the franchise) in Texas, the actions of Cox Southwest cannot establish jurisdiction over CoxCom—an unrelated entity. Rembrandt is in error in arguing that they do.

## II. ARGUMENT AND LEGAL AUTHORITY

**A. CoxCom is Not Purposefully Directing Activity at Texas or Toward the Residents of Texas.**

Several years ago, CoxCom made a strategic business decision to exit from Texas. (Suppl. Decl. ¶ 1.) As a result, in 2003, with the exception of the POP node, CoxCom assigned all of its assets that were located in Texas to Cox Southwest (thereafter Cox Southwest sold almost all of its assets to Cebridge). (Spalding Decl. ¶ 7.) As a result, CoxCom does no business in Texas, owns no assets in Texas, keeps no records in Texas, has no employees in Texas, and does not own or operate any cable systems in Texas. (*Id.* ¶¶ 4,6.)

In its Opposition, Rembrandt argues that this Court should exercise jurisdiction over CoxCom because CoxCom was doing business in Texas as recently as 2006. (Opp'n at 6.) As support for this argument, Rembrandt relies on the 2006 asset purchase agreement in which Cox Southwest sold assets to Cebridge and which identifies CoxCom as a "Seller". (*Id.* at 8.) Rembrandt also relies on press releases and SEC filings discussing the transaction. (*Id.* at 6, n.20; 8, n.34.) Rembrandt is simply in error. As Mr. Spalding explained in his Declaration, CoxCom has not done business in Texas in several years, having assigned its assets to Cox Southwest in 2003. (Spalding Decl. ¶¶ 3, 4, 7.) CoxCom is identified as a "Seller" in the asset purchase agreement and publications regarding the transaction because, in addition to purchasing Cox Southwest's assets, Cebridge purchased assets from several other Cox Communications'

2

subsidiaries, including CoxCom—assets that were not located in Texas. (Spalding Suppl. Decl. ¶ 4.)

Rembrandt also points to the POP node in Dallas as evidence that CoxCom is directing activity toward Texas sufficient to justify the exercise of personal jurisdiction. Again, however, Rembrandt is in error. The POP node cannot support the exercise of jurisdiction because it is not a continued activity directed toward a Texas resident. (Spalding Decl. ¶ 5.) Moreover, the internet node is not related to the DOCSIS communications that occur between a cable modem and the cable modem termination system in the head-end (*Id.* ¶ 5), which are the methods and systems at issue in this litigation (*see* Compl. ¶¶ 17, 23, 29, and 35 (describing the Patents in Suit)). The purpose of the node, which is implemented by computer servers in leased space in Dallas, is to connect with CoxCom's national internet backbone to carry traffic from and to its cable systems that are located in several (non-Texas) metro areas throughout the country. Interconnecting national or international networks through assets in Texas does not support personal jurisdiction. *See Access Telecom, Inc. v. MCI Telecomms. Corp.*, 197 F.3d 694, 717-718 (5th Cir. 1999) (holding that leasing [telephone] lines in Texas "for the purpose of connecting two points in Mexico . . . [did] not constitute doing business in Texas"); *Applewhite v. Metro Aviation, Inc.*, 875 F.2d 491, 717-18 (5th Cir. 1989) (holding interconnections, even though crossing the border into a forum, are insufficient to confer jurisdiction under the Due Process Clause). The purchase of the computer servers used by the POP node and the purchase of related services (such as the space occupied by the servers) also do not support personal jurisdiction. *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408 (1984) ("mere purchases, even if occurring at regular intervals, are not enough to warrant a State's assertion of . . . jurisdiction over a nonresident corporation in a cause of action not related to

3

those purchase transactions"); *Shaffer v. Heitner*, 433 U.S. 186, 213 (1977) (ownership of property in forum state unrelated to claim did not support jurisdiction).

B.  **The Activities of Affiliates of Cox Communications are Irrelevant to Whether This Court Should Exercise Jurisdiction Over CoxCom.**

Rembrandt's assertions regarding the role of Cox Communications and other Cox Communications' affiliates and subsidiaries also are in correct—and irrelevant.

First, Rembrandt argues that this Court should exercise jurisdiction over CoxCom because the Henderson Area Chamber of Commerce lists Cox Communications as having an office in Henderson and employing eleven people in the city. (Opp'n at 9.) Regardless of what the Henderson Area Chamber of Commerce says, Cox Communications does not have an office in Henderson, Texas (or anywhere else in Texas) and does not employ any people in Henderson (or anywhere else in Texas). (Spalding Suppl. Decl. ¶ 5.) In fact, Cox Communications has not done business in Texas for more than ten years. (*Id.*) The fact that a local chamber of commerce directory lists Cox Communications as being a "Major Employer" (Opp'n at 9), does not make it so.

Second, Rembrandt argues that CoxCom is subject to jurisdiction in Texas because Cox Southwest owns a franchise located in Texas. (Opp'n at 9.) While Cox Southwest does own a franchise in Henderson, Texas (until March 25, 2007 anyway), it is not a voluntary ownership. In fact, in connection with Cox Southwest's sale of assets to Cebridge, Cox Southwest sold all of the physical assets associated with the cable television franchise and attempted to transfer the franchise itself. (Spalding Suppl. Decl. ¶ 2.) However, the City of Henderson refused to consent to the transfer of the franchise and, as a result, Cox Southwest was prohibited from immediately transferring the franchise. (*Id.*) After the franchise expires in March, Cox Southwest will have no assets in Texas. (*Id.*)

4

Moreover, even if the alleged activities regarding Cox Communications and Cox Southwest were true, they are irrelevant as to whether CoxCom is subject to personal jurisdiction in Texas. Rembrandt attempts to spin the parties' Stipulation into an agreement that CoxCom would not oppose personal jurisdiction in Texas. (Opp'n at 1-2.) That is simply not correct. The Stipulation was reached and Cox Communications and Cox Enterprises, Inc. were dismissed from this action because they are holding companies whereas CoxCom actually owns and operates the systems accused in this action (though not in Texas). CoxCom stipulated only that it was the proper entity to answer any infringement claims. (Carter Decl. Ex. A.) As evidenced by the Stipulation itself, there was no agreement that CoxCom would consent to personal jurisdiction in Texas. (*Id.*)

There also was no agreement that personal jurisdiction could be exercised over CoxCom based on the alleged Texas activities of Cox Communications and other Cox Communications' affiliates and subsidiaries. In fact, this is contrary to case law which holds that, absent evidence of an alter ego arrangement, the activities of a parent company are irrelevant in establishing personal jurisdiction over a subsidiary—and vice versa. *3D Sys., Inc. v. Aarotech Labs., Inc.*, 160 F.3d 1373, 1380 (Fed. Circ. 1998) (examining jurisdiction based on the specific activities of the respective companies "[o]n its own"); *Hanson Pipe & Prods., Inc. v. Bridge Tech. LLC*, 351 F. Supp.2d 603, 611-12 (E.D. Tex. 2004), *aff'd*, 160 Fed. Appx. 380, No. 05-40161, 2005 WL 3525581 (5th Cir. 2005).

C.  **Exercising Personal Jurisdiction Over CoxCom Would be Unreasonable and Does Not Comply With Due Process.**

Even if the Court were to find that CoxCom is subject to personal jurisdiction in Texas (which CoxCom denies), the exercise of such jurisdiction would be both unreasonable and unfair. *See HollyAnne Corp. v. TFT,Inc.*, 199 F.3d 1304 (Fed. Cir. 1999); *Red Wing Shoe Co.,*

5

*Inc. v. Hockerson-Halberstadt, Inc.* 148 F.3d 1355 (Fed. Cir. 1998); *Colida v. LG Elec., Inc.*, 77 Fed. Appx. 523, 526, No. 03-1399, 2003 WL 22319221 (Fed. Cir. 2003).

In evaluating the reasonableness of personal jurisdiction, courts consider several factors including, *inter alia*, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, and the interstate judicial system's interest in obtaining the most efficient resolution of controversies. *Id.* (quoting *Burger King v. Rudezewicz*, 471 U.S. 462, 477 (1985)). Generally speaking, Texas' "interest[s] [are] preventing patent infringement within its borders and in protecting the patent rights of its citizens. . . [and] . . . furthering commerce and scientific development, especially within its technology sector, which is promoted by patent laws." *Marshall Packaging Co., LLC v. Nestle Waters N. Am., Inc.*, No. 6:05CV295, 2006 WL 871015, at *5 (E.D. Tex. Mar. 24, 2006). However, unlike the plaintiff in *Marshall Packaging* (which was a Texas corporation doing business in Texas), Rembrandt is a patent troll organized under the laws of New Jersey and with a principal place of business in Pennsylvania. (Compl. ¶ 1, *see also* Def. CoxCom's Mot. to Dismiss at 4-5, Ex. 3 (discussing Rembrandt's business model).) Rembrandt has not attempted to practice, develop, or otherwise advance the technology covered by its patents in Texas. Therefore, exercising jurisdiction over CoxCom will do nothing to protect the patent rights of Texas citizens or to further commerce and scientific development in Texas. Finally, since CoxCom is not doing business in Texas, exercising jurisdiction over CoxCom does nothing to prevent patent infringement within Texas. Simply, Texas has no interest in Rembrandt's claims against CoxCom.

When considering the plaintiff's interest in obtaining convenient and effective relief, courts examine "the convenience and effectiveness of relief from the plaintiff's perspective, as generally the first party to file suit chooses the forum." *Breckenridge Pharm., Inc.*, 444 F.3d at

6

Id. at 1367, 1368. However, when the plaintiff's and State's interest in litigating in a particular forum is particularly attenuated, as in this case, the Court should not exercise personal jurisdiction over a non-resident defendant. *See Colida*, 77 Fed. App'x at 526. Here, Rembrandt was *not* the first party to file suit or choose a forum—CoxCom was, and it filed suit in Delaware. Moreover, the United States District Court for the District of Delaware, located in Wilmington, Delaware, is approximately 30 miles from Rembrandt's headquarters. *See* Exhibit 2 attached hereto. Presumably, much more convenient than Texas. Furthermore, Rembrandt has already expressed its desire and willingness to litigate in Delaware, having filed multiple patent litigation matters there involving the same patents at issue in this case.[2]

When considering the interstate judicial system's interest in obtaining the most efficient resolution of controversies, courts compare the alternative forums and may consider the case load of the courts as well as their familiarity with the type of litigation. *Amoco Egypt Oil Co., v. Leonis Nav. Co.*, 1 F.3d 848, 852 (9th Cir. 1993); *Breckenridge Pharm., Inc.*, 444 F.3d at 1368. In that regard, according to the Statistical Tables for the Federal Judiciary, in 2005, there were 1,190 total filings in the District of Delaware for four judges, or 298 cases per judge; and 3,583 filings in the Eastern District of Texas for eight judges, or 448 cases per judge. Judicial Caseload Profile Reports for the District of Delaware and the Eastern District of Texas, http://www.uscourts.gov/fcmstat/index.html. (In the "other" category, which includes patent litigation matters, 13 cases were filed in the District of Delaware and 110 in the Eastern District of Texas. U.S. District Courts—Civil Cases Commenced, by Nature of Suit and District, During

---

[2] On October 13, 2006, Rembrandt filed an action against Cablevision Systems Corporation, *et al.* (case no. 1:06-0CV-00635-GMS), asserting the same patents that are at issue in this action, as well as one additional patent. A true and correct copy of this complaint is attached hereto as Exhibit 3. Rembrandt has also brought other patent infringement suits in Delaware against CBS (case no. 1:06-00727), ABC (case no. 1:06-00730), NBC (case no. 1:06-00729) and Fox (case no. 1:06-00731) for infringement of U.S Patent No. 5,243,627; true and correct copies of each complaint are attached hereto as Exhibits 4A-4D.

7

the 12-Month Period Ending June 30, 2005, http://www.uscourts.gov/stats/june05/index.html.) The lighter case load of the Delaware court suggests that this case may be resolved just as efficiently in Delaware. Further, the time for disposition of the cases is almost identical—10.9 months in Delaware versus 10.3 months in the Eastern District of Texas. Therefore, the statistics do not substantially favor Texas, and just as sound a resolution can be had in Delaware.

CoxCom does not have systematic and continuous contacts with the State of Texas sufficient for this Court to exercise general personal jurisdiction over it. It ceased any business and operations in Texas in 2003, making any contacts non-existent. In addition, there are no minimum contacts with Texas to support specific jurisdiction with respect to the Patents in Suit. CoxCom has no activities, employees, operations, or assets in Texas that are directed to the technology of the Patents in Suit. The only asset, the POP node, supports internet backbone traffic and *not* any cable modem or high-speed internet traffic of Texas subscribers because there are none. However, if this Court should find sufficient minimum contacts to support personal jurisdiction, it should find that the assertion of such jurisdiction is both unfair and unreasonable based on the above factors. Rembrandt has no business or contacts with Texas, other than filing suit here, and does not practice or otherwise make use of its patents. CoxCom is no longer located here, and Delaware, where both parties are amenable to suit and where Rembrandt already has pending matters involving the same patents, can provide as just and efficient a resolution to the matter as this Court.

### III.    CONCLUSION

For the reasons set forth above, CoxCom respectfully submits that it would be improper for this Court to exercise personal jurisdiction over it and renews its request to be dismissed from this action.

US2000 9723406.3 C8490-331049

This the 26th day of January 2007.

        */s/ Michael E. Jones*
Mitchell G. Stockwell
Lead Attorney
Georgia Bar No. 682912
KILPATRICK STOCKTON LLP
1100 Peachtree St NE
Suite 2800
Atlanta GA  30309-4530
Telephone:  404-815-6214
Facsimile:   404-815-6555
MStockwell@KilpatrickStockton.com

Michael E. Jones
State Bar No. 10929400
mikejones@potterminton.com
Allen F. Gardner
State Bar No. 24043679
allengardner@potterminton.com
POTTER MINTON
A Professional Corporation
110 N. College, Suite 500 (75702)
PO Box 359
Tyler, Texas  75710
Telephone:  903-597-8311
Facsimile:  903-593-0846

***Attorneys for CoxCom, Inc.***

### CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was filed electronically in compliance with Local Rule CV-5(a) and contemporaneously served upon all counsel who have consented to electronic service on this the 26th day of January 2007.  Other counsel shall be served by first class mail.

        */s/ Michael E. Jones*
        Michael E. Jones