IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| REMBRANDT TECHNOLOGIES, LP, | § | |
| | § | |
| Plaintiff, | § | |
| v. | § | CASE NO. 2:06-CV-223 [TJW] |
| | § | JURY TRIAL REQUESTED |
| CHARTER COMMUNICATIONS, INC., | § | |
| CHARTER COMMUNICATIONS | § | |
| OPERATING, LLC, COX | § | |
| COMMUNICATIONS, INC., COXCOM, | § | |
| INC., COX ENTERPRISES, INC., CSC | § | |
| HOLDINGS, INC. AND CABLEVISION | § | |
| SYSTEMS CORPORATION, | § | |
| | § | |
| Defendants. | § | |

**REMBRANDT TECHNOLOGIES, LP'S SURREPLY IN OPPOSITION
TO COXCOM INC.'S MOTION TO DISMISS COMPLAINT
<u>FOR LACK OF PERSONAL JURISDICTION</u>**

This Court has personal jurisdiction over CoxCom. Rembrandt has met its burden of showing that CoxCom has contacts with Texas sufficient to support both specific and general personal jurisdiction. CoxCom has failed to meet its burden of making a compelling showing that it would be unreasonable for this Court to exercise personal jurisdiction over it.

### A.  Coxcom Has Sufficient Contacts with Texas for Personal Jurisdiction.

The record before the Court shows that CoxCom has had purposeful contacts with Texas out of which Rembrandt's claims arise, thereby warranting specific personal jurisdiction. CoxCom does not deny, nor could it deny, that its contacts with Texas were purposeful and intended, or that Rembrandt's cause of action for patent infringement arises out of those purposeful contacts. The record also shows that CoxCom has had continuous and systematic contacts with the State of Texas, thereby warranting general personal jurisdiction. CoxCom has had a long history of substantial, continuous and systematic contacts with Texas, directing its cable operations at Texas residents since the 1970s. Opposition Brief at pp. 5-9. CoxCom concedes, as it must, that it operated a cable business in Texas until the end of 2003. Reply Brief at 2. The record further shows that CoxCom's cable operations in Texas continued until, at least, May 2006. Opposition Brief at 6-8. Contrary to Mr. Spalding's Declaration, the Asset Purchase Agreement with Cebridge stated that CoxCom and Cox Communications "owned and operated" the cable television systems being sold in Texas. Opposition Brief at 9 & n. 34.

CoxCom suggests that this Court lacks personal jurisdiction because it no longer has cable operations in Texas. CoxCom states that it made a "business decision" in 2003 to stop operating cable companies in Texas and another Cox entity "assumed ownership" of those assets in December 2003. Whether CoxCom divested its Texas assets at the end of 2003 or in mid-2006, as the Asset Purchase Agreement suggests, does not matter. Neither transaction allows

**REMBRANDT'S SURREPLY IN OPPOSITION TO COXCOM'S MOTION TO DISMISS**   Page 1

CoxCom to avoid personal jurisdiction in this instance. Rembrandt asserts claims against CoxCom for patent infringement, including patent infringement that CoxCom committed in Texas prior to its decision to stop doing business here.

The federal courts have not recognized a "business decision" exception to the personal jurisdiction rules. Once a defendant has created purposeful contacts with a state, it cannot erase those contacts by leaving that state. "[O]ne cannot defeat personal jurisdiction by a move away from the state in which the underlying events took place." *Steel v. United States,* 813 F.2d 1545, 1549 (9th Cir. 1987). General jurisdiction may be assessed by evaluating the defendant's contacts with the state over a reasonable number of years up to the date the suit was filed. *Alpine View Co, Ltd. v. Atlas Capco AB,* 205 F.3d 208, 217 (5th Cir. 2000). Similarly, in the context of specific personal jurisdiction, "the determination of amenability to suit takes place at the time of the relevant contacts." *Steel v. United States,* 813 F.2d at 2549.[1] In fact, accepting CoxCom's suggestion that moving out of state renders one's past contacts with the state effectively null and

---

[1] The cases cited by CoxCom (Reply Brief at 3-4) are inapposite, and CoxCom's "backbone" argument is a red-herring. The crux of the matter is that CoxCom is clearly subject to *specific* personal jurisdiction in this case regardless of the "backbone." In its Reply, CoxCom did not attempt to rebut that argument. Rather, CoxCom's cases address only the issue of when limited, isolated contacts may constitute "continuous and systematic" contacts sufficient to establish *general* personal jurisdiction. Rembrandt does not rely solely on the "backbone," however, as a basis for asserting *general* personal jurisdiction. The "backbone" is only one of a myriad of CoxCom's contacts with Texas dating back to the 1970s: cable systems, interactive website services, Internet services, etc. Opposition Brief at pp. 5-9 and accompanying notes. Together, these contacts support general personal jurisdiction. CoxCom contends that, for jurisdictional purposes, its prior contacts "disappeared" when it left the state. The federal cases addressing this issue support Rembrandt. See *Harlow v. Children's Hosp.*, 432 F.3d 50, 61 (1st Cir. 2005); *Alpine View Co., Ltd. v. Atlas Copco AB*, 205 F.3d 208, 217 (5th Cir. 2000); *Steel v. United States,* 813 F.2d 1545, 1549 (9th Cir. 1987). Finally, lest CoxCom's Reply Brief be read to contend otherwise, it is not the law that isolated contacts cannot support *specific* personal jurisdiction. *See*, *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 476, 105 S. Ct. 2174 (1985), *citing McGee v. Int'l Life Ins. Co., 355 U.S., at 223* ("So long as it creates a 'substantial connection' with the forum, even a single act can support jurisdiction.").

void - as if they never occurred - would eliminate specific jurisdiction. Specific jurisdiction allows redress for an injury caused in the state by a party no longer doing business in that state.[2]

**B.      This Court's Exercise of Personal Jurisdiction over CoxCom Is Reasonable.**

Having purposefully directed its activities at Texas residents, CoxCom must, in order to defeat jurisdiction, "present a *compelling* case that the presence of some other considerations would render jurisdiction unreasonable." *Burger King* 471 U.S. at 476-477 (emphasis added). The law affords this opportunity to defendants so that "jurisdictional rules may not be employed in such a way as to make litigation 'so gravely difficult and inconvenient' that a party unfairly is at a 'severe disadvantage' in comparison to his opponent." *Id.* CoxCom has not come close to making such a showing.

CoxCom suggests that jurisdiction in this Court is unreasonable because Texas has no greater interest than Delaware in trying this case and that this case could be conveniently tried in Delaware, where Rembrandt has filed other suits. This Court's interest in exercising jurisdiction over unlawful acts of patent infringement that have occurred within its territorial jurisdiction over a prolonged period is neither attenuated nor lost because CoxCom thereafter left the State. Nor is this Court's interest in adjudicating Rembrandt's claims attenuated because Rembrandt is not a citizen of Texas. Rembrandt is not a citizen of Delaware, either.

Moreover, the judicial case management statistics cited by CoxCom do not establish that Rembrandt's claims against CoxCom would be resolved more expeditiously in Delaware. To the

---

[2] *Harlow v. Children's Hosp.*, 432 F.3d at 61 ("'For purposes of specific jurisdiction, contacts should be judged when the cause of action arose, regardless of a later lessening or withdrawal.' A defendant cannot avoid jurisdiction by shrinking its contacts with the forum after the tort."); *see also, Burger King,* 471 U.S. at 476 ("So long as a commercial actor's efforts are 'purposefully directed' toward residents of another State, we have consistently rejected the notion that an absence of physical contacts can defeat personal jurisdiction there.")

contrary, the statistics suggest that this Court has more experience than the Delaware court in adjudicating patent cases and that this Court is able to dispose of a much heavier caseload in less time than the Delaware court.[3] Moreover, neither case cited by CoxCom holds that the relative caseloads of the forum court and some other court in which the suit is not pending, but in which it might be filed, is a significant factor in determining whether exercise of personal jurisdiction by the forum court is unreasonable.

The critical facts are that CoxCom chose to do business in this State for many years; Rembrandt's cause of action arises out of that business; Rembrandt chose to bring its action in this forum; and this suit will continue in this Court against the other defendants regardless of the outcome of this Motion. The interstate judicial system's interest in obtaining the most efficient resolution of this controversies is best served, therefore, by denying the Motion and allowing this suit to proceed with CoxCom as a party to it.

### C. The Agreement Does Matter.

CoxCom is wrong when it suggests that the August 25, 2006 Agreement between Rembrandt, Cox Enterprises, Inc., Cox Communications, and CoxCom (collectively, the "Cox Parties") had nothing to do with personal jurisdiction and has no bearing on the issues before the Court. The genesis of the Agreement was personal jurisdiction. It is undisputed that the Cox Parties asked Rembrandt to dismiss Cox Enterprises and Cox Communications "on the grounds that (i) the Court does not have personal jurisdiction over [them] and (ii) CoxCom is the Cox entity that operates and/or oversees the various cable businesses and franchises." Carter Aff. ¶ 2.

---

[3] CoxCom's Reply at 7-8. Moreover, CoxCom ignores the fact that this case has been on file since June 2006, that it was transferred to this Court in September 2006, that CoxCom answered in October 2006, and that CoxCom did not move to dismiss until December 2006. If this case were dismissed and Rembrandt had to file elsewhere, it would lose the benefit of its time on this docket and would start at the end of the line on the next court's docket.

Rembrandt agreed to dismiss CoxCom's parents in exchange for an agreement that CoxCom is the proper Cox entity to respond to Rembrandt's claims of infringement in this case, that Rembrandt could reach all of Cox's cable operations through CoxCom, and that Rembrandt did not need to add any other Cox entities or affiliates to assert its infringement claims against Cox's cable operations. CoxCom and its parents entered this agreement in August 2006 despite knowing that Cox Southwest had "assumed ownership" of CoxCom's cable assets at the end of 2003, and that CoxCom and Cox Southwest had sold those assets in May 2006. CoxCom should not be able to avoid the bargain it made by now claiming that the asset transfer to Cox Southwest insulates it from personal jurisdiction. Rembrandt is entitled to the benefit of its bargain.[4]

In conclusion, due process is clearly satisfied in this case. The fact that CoxCom allegedly decided to stop doing business in Texas in 2003 does not divest this Court of personal jurisdiction. Rembrandt has sued CoxCom for patent infringement, including infringement that occurred in Texas before CoxCom made or implemented that decision. The record contains no basis for concluding that CoxCom should not have reasonably anticipated having to defend in a Texas court claims arising out of its extensive cable operations in Texas. Moreover, CoxCom agreed to be the proper party to answer Rembrandt's patent infringement claims in this action and to be the party through whom all of Cox's cable operations could be reached.

---

[4] The Agreement also allows this Court to consider all Cox cable operations in Texas in deciding whether it is fair to require CoxCom to defend against Rembrandt's infringement claims in this Court. This Court has jurisdiction over CoxCom based on its concession that it operated cable companies in Texas through 2003. The Asset Purchase Agreement with Cebridge establishes that CoxCom continued to have an interest in cable operations in Texas until May 2006. But even if it did not, the Court may consider the cable operations of any other Cox entity from 2004 to the present in determining whether it is fair to require CoxCom to defend against Rembrandt's infringement claims in this Court. The cases cited by CoxCom do not preclude the Court from considering the contacts of other Cox entities. CoxCom and its parents agreed that it is the proper party to defend all of Cox's cable operations against Rembrandt's infringement claims.

DATED: February 5, 2007             Respectfully submitted,

                              /s/ Sam Baxter
                              Sam Baxter
State Bar No. 01938000
**McKOOL SMITH, P.C.**
505 E. Travis, Suite 105
Marshall, Texas 75670
Telephone: (903) 927-2111
Telecopier: (903) 927-2622
sbaxter@mckoolsmith.com

Jeffrey A. Carter
State Bar No. 03919400
**McKOOL SMITH, P.C.**
300 Crescent Court, Suite 1500
Dallas, Texas 75201
Telephone: (214) 978-4006
Telecopier: (214) 978-4044
jcarter@mckoolsmith.com

Travis Gordon White
State Bar No. 21333000
**McKOOL SMITH, P.C.**
300 W. 6th Street, Suite 1700
Austin, Texas 78701
Telephone: (512) 692-8700
Telecopier: (512) 692-8744
gwhite@mckoolsmith.com

Robert M. Parker
State Bar No. 15498000
Robert Christopher Bunt
State Bar No. 00787165
**PARKER & BUNT, P.C.**
100 E. Ferguson, Suite 1114
Tyler, Texas 75702
Telephone: (903) 531-3535
Telecopier: (903) 533-9687
cbunt@cox-internet.com
rmparker@cox-internet.com

Case 2:06-cv-00223-TJW-CE    Document 142    Filed 02/05/2007    Page 7 of 8

Franklin Jones, Jr.
State Bar No. 00000055
**JONES & JONES, INC.**
201 W. Houston Street
P.O. Drawer 1249
Marshall, Texas  75670
Telephone:  (903) 938-4395
Telecopier:  (903) 938-3360
maizieh@millerfirm.com

**ATTORNEYS FOR PLAINTIFF
REMBRANDT TECHNOLOGIES, LP**

# CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was filed electronically in compliance with Local Rule CV-5(a).  As such, this document was served on all counsel who have consented to electronic service.  Local Rule CV-5(a)(3)(A).  Pursuant to Fed. R. Civ. P. 5(d) and Local Rule CV-5(e), all other counsel of record not deemed to have consented to electronic service were served with a true and correct copy of the foregoing by U.S. mail, on this the 5th day of February, 2007.

/s/ Sam Baxter_____
Sam Baxter